Smith *v.* Philadelphia School District et al.,
Appellants.

198

Argued January 26, 1939. Before Kephart, C. J., Schaffer, Maxey, Drew, Linn, Stern and Barnes, JJ.

*Robert von Moschzisker* and *Franklin S. Edmonds,* for appellants.

*George C. Klauder,* with him *Carl H. Anderson,* for appellee.

*Wm. A. Schnader,* with him *Louis F. Floge* and *Bernard G. Segal,* for United Committee, under Rule 61.

Opinion by Mr. Justice Drew, March 30, 1939:

Elizabeth R. Smith entered the employ of the School District of Philadelphia as an elementary school teacher on June 1, 1903, and has continued in that position to this day, without ever having had a written contract for such employment. On her petition the Court of Common Pleas of Philadelphia County issued a writ of alternative mandamus to compel the School District to exe-

cute a written contract with her for an annual compensation of $2,400, to which amount she alleged she was entitled by the terms of the Teachers' Tenure Act of April 6, 1937, P. L. 213, amending the Act of May 18, 1911, P. L. 309, known as the School Code. The School District filed an answer thereto, averring, among other things, that it had tendered her a written contract in accordance with the Tenure Act in the sum of $2,200, which it alleged was the proper annual compensation under the terms of her employment, and that she should be compelled to accept that contract if she desires to continue her employment with the School District. Upon the petition and answer, together with a stipulation later entered into by the parties as to certain facts relative to the employment and salary of appellee, the by-laws and rules of the School District, and the salary changes made by the latter, the lower court entered judgment as prayed for and directed that a peremptory writ of mandamus issue. The School District then took this appeal.

The first question for our determination is whether or not there existed any contractual relationship between the School District and appellee on April 6, 1937, the effective date of the Tenure Act. Unless a valid and enforceable contract did exist at that time, the appellee, of course, could have no legal basis for refusing to accept the contract tendered her. We have no doubt that such a contract did exist. The School District appointed appellee as a teacher; she accepted and served under that appointment for more than a third of a century, and continues so to do at the present time. There is no merit in the contention of the School District that prior to the enactment of the Tenure Act it had no power to contract as to salaries of its teachers. In *Teachers' Tenure Act Cases*, 329 Pa. 213, 226, this Court said: "It is useless to say that the school teachers do not have contracts of employment. They have contracts, expressly so denominated by the legislature. They are so in substance

and form. Actions in assumpsit by school teachers for the enforcement of contractual rights have been recognized: *Costello v. School Dist.*, 241 Pa. 179; see *Potts v. Penn Township School Dist.*, 127 Pa. Superior Ct. 173. In this respect the teachers differ from other governmental employees who hold their position solely by tenure of appointment, without express contractual rights."

It is thus apparent that at the time the Tenure Act became effective, appellee was performing her duties as a teacher under a valid contract, and was, therefore, entitled to receive a new written contract as provided by that Act. The main question then for consideration is in what amount should that contract be drawn. Appellee contends, and the lower court held, that at the effective date of the Tenure Act her contract was for $2,400 per year and consequently the School District was required to offer her a new contract in that amount. With this we do not agree. Section 1210 of the School Code, providing for minimum salaries for all teachers, was amended by the Act of July 10, 1919, P. L. 910; Act of April 28, 1921, P. L. 328; Act of May 23, 1923, P. L. 328, and Act of March 12, 1929, P. L. 18. The amendment of 1921, as subsequently amended, contains what is generally known as the Edmonds Salary Schedule. Under this legislation, the minimum salary which appellants were required to pay appellee for the year 1937 was $2,200. In the amendment of 1919, as amended in 1921, the legislature, after setting up the statutory minimum, provided: "Nothing in this act contained shall be construed . . . to prevent the adoption of *any* salary schedule in conformity with the provisions of this act." (Italics ours.) Pursuant to this grant of authority, the School District adopted in 1921 a salary schedule, which was amended in 1926 and readopted in 1928 as Rule VIII of the By-laws and Rules of the School District. By Section 1 of this Rule, it was provided, inter alia: "This schedule shall take effect as of May 1, 1926, provided that the salary of any employe who shall con-

tinue to hold his or her present position shall not be reduced in consequence of the adoption of this schedule *except by direction of the Board."* (Italics ours.) By this provision, the School District reserved the right, as authorized by the Edmonds Salary Schedule, at any time in the future to reduce the salary of any teacher, as long as such reduction did not set the salary below the minimum provided by the Edmonds Salary Schedule. That this was the understanding of the parties is evidenced by the fact that prior to the Tenure Act the School District, on several occasions, exercised its right to make salary reductions and payments of the salary so reduced were accepted by all of appellants' employees, including appellee, without complaint. These by-laws and rules, as well as all provisions of the School Code, became a part of the contract between appellants and appellee. A school district is an agency of the Commonwealth and as such a quasi-corporation for the sole purpose of administering the system of public education: *Wilson v. Philadelphia School District,* 328 Pa. 225, 231. It is, therefore, subject to the familiar principle that by-laws and rules of corporate bodies intended to effect and induce action by third persons are binding upon the corporate body when accepted and relied upon by such persons: *Morris v. Board of Education of City of New York,* 104 N. Y. S. 979; Fletcher, Cyclopedia, Corporations (Rev. Ed.), Vol. 8, Section 4197; see *Costello v. School District,* supra. Appellee's argument that the schedule set up by the by-laws and rules could not be changed is thus without merit, since both the School Code, as amended, and the by-laws and rules themselves permitted such reduction. On November 20, 1936, the School District adopted a resolution fixing appellee's salary for 1937 at $2,300, which action the School Board had the legal right to do.

Under the authority of *Teachers' Tenure Act Cases,* supra, *(Malone v. Hayden,* page 235; *Ditty v. Weiss,* page 237), which held that the new contract must carry

over the existing salary, appellee was, therefore, entitled to a contract for $2,300 per year, if, under the circumstances of the instant case, the further reduction to $2,200 would be in conflict with the provisions of the Tenure Act. The fact that by the terms of the old contract the School District had the right to make demotions in salary would not alone permit a further reduction, since once the Act became effective this right could not be exercised if it were in violation of the Act. Section 3 of the Act provides, inter alia: ". . . there shall be no demotion of any professional employe, either in salary or in type of position, without the consent of the said employe, or if such consent is not received, then such demotion shall be subject to the right to a hearing before the board of school directors. . . ." The contract offered to appellee in the sum of $2,200 was not one in violation of the above section, since the reduction made did not affect appellee alone. The entire salary schedule of the School District was reduced, and in no case did the modifications place the salaries below the minimum set by the Edmonds Salary Schedule. Because of the perilous financial situation of the School District,* these reductions were of absolute necessity. Under existing financial and economic conditions, it was impossible to continue the higher salary rates, and had

---

* In 1937 the School District had a deficit of $1,141,000; for the year 1938 the operating deficit amounted to $7,964,968, making a total shortage for the two years of $9,105,968, which shortage was met by issuing bonds in the amount of $8,350,000, secured by a pledge of all delinquent taxes owed to the School District. For the year 1939, by permitting a reduction of teachers' salaries to the Edmonds statutory minimum, the School District's expenses are estimated at $32,753,061, and the total revenues are estimated at $27,863,725; making an estimated deficit for the year 1939 of $4,889,336. If the School District is required to pay salaries at its original schedule, from the effective date of the Tenure Act, without permitting any reduction, this estimated deficit would be increased by the sum of $2,700,000, thus making a total probable deficit for the year 1939 of $7,589,336.

no modified salary schedule been adopted by the School District, it would have been necessary to close many schools and in various other ways curtail the educational program. The recent decision of this Court, in *Ehret v. School District of the Borough of Kulpmont*, 333 Pa. 518, clearly shows that a general reduction of salaries may be made where a school district cannot continue to pay existing salaries without disrupting its entire financial scheme and where to do so would threaten its ability to properly carry out its functions. In that case, Mr. Chief Justice KEPHART, speaking for the Court, said: "As we have stated before, the purpose of the Tenure Act was to maintain an adequate and competent teaching staff, free from political and personal arbitrary interference, whereby capable and competent teachers might feel secure and more efficiently perform their duty of instruction, but it was not the intention of the legislature to confer any special privileges or immunities upon professional employees to retain permanently their position and pay regardless of a place to work and pupils to be taught; nor was it the intention of the legislature to have the Tenure Act interfere with the control of school policy and the courses of study selected by the administrative bodies; *nor was it the intention of the legislature to disrupt a school district's financial scheme, which must be operated upon a budget limited by the Code, that cannot be exceeded except in the manner provided by the legislature.*" (Italics ours.)

The Tenure Act is but an amendment to the School Code, and should be construed in conjunction with the other provisions of the Code to effectuate its purpose as a whole. By the provisions of the Code, a school district must operate on a strictly limited budget and changes can be made only in the manner provided by the legislature (School Code, Section 532, as amended). Furthermore, if the School District were required to maintain forever its salary schedule, it must in some manner be accorded the right to secure the necessary

funds. But its ability to levy taxes is strictly limited by statute (School Code, Section 524, as amended), and by the provisions of our Constitution: *Wilson v. Phila. School Dist.,* supra. It is obvious that the legislature did not intend that Sec. 3 of the Tenure Act should be construed to "freeze" salaries above the statutory minimum schedules where to do so would bind the school district to contracts for which it could not legally secure the required revenue.

In order to protect teachers in their tenure of position, sections 2 and 6 of the Tenure Act provide that contracts should be of permanent duration, unless terminated in accordance with the provisions of the Act. To prevent a school district from attempting to avoid the tenure of office thus guaranteed by reducing the salary of particular teachers to such a low amount that they would be forced to resign, the legislature provided in section 3 that demotions in position or salary could be made only by complying with the provisions of that section. The word "demotion" as used therein means a reduction of particular teachers in salary or in type of position as compared with other teachers having the same status. But where there is a general adjustment of the salaries of all teachers with no consequent individual discrimination, the relative grade or rank of any particular teacher remains the same, and there has been no "demotion" of any particular teacher within the meaning of the word as there used.

Section 3 of the Tenure Act requires that where there is a "demotion in salary" there shall be a hearing in the same manner as provided in case of dismissal. Section 2 sets forth the procedure to be followed in conducting such hearings. It is there provided that charges shall be filed against the teacher and that at the hearing evidence shall be presented relative to those charges. The purpose of the hearing under this section is to protect the teachers from arbitrary discrimination by being subjected to unfounded or inadequate charges. In the pres-

ent case, however, it is evident that there are no charges which can be filed against the teacher, and it is therefore apparent that it was not the legislative purpose to include this type of reduction as a "demotion in salary" within the meaning of section 3 so as to require a hearing.

The legislature did not intend to thus restrict the power of the School District to make a general adjustment of all salaries to the statutory minimum where the financial condition of the district required that such action be taken. In the instant case, there was no discrimination and the reduction was not made for the purpose of evading the provisions giving the teachers permanent tenure of office. There was no "demotion in salary" within the meaning of the Tenure Act.

For the foregoing reasons, the School District was entitled to make the salary reductions effected by the resolution of January 11, 1938. Therefore, appellants should be directed to enter into a contract with appellee, in the manner and form prescribed by the Tenure Act, in the sum of $2,200. The record is remitted to the court below for the purpose of entering a judgment in conformity herewith.

Judgment, as modified, affirmed; costs to be paid by appellants.