## Teachers' Salary Increases

ADAMS, Deputy Attorney General, August 11, 1943. —You have requested our advice on certain matters relating to the administration of the Act of May 28, 1943, P. L. 787.

In interpreting laws, the legislative intent controls. Section 51 of article IV of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §551, provides as follows:

"The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the Legislature. Every law shall be construed, if possible, to give effect to all its provisions.

"When the words of a law are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

"When the words of a law are not explicit, the intention of the Legislature may be ascertained by considering, among other matters—(1) the occasion and necessity for the law; (2) the circumstances under which it was enacted; (3) the mischief to be remedied; (4) the object to be attained; (5) the former law, if any, in-

cluding other laws upon the same or similar subjects; (6) the consequences of a particular interpretation . . . ."

With these principles in mind we shall consider your various questions, which we shall state and answer seriatim.

1. The act provides salary increases for members of the teaching and supervisory staffs of each school district.

Does the term "members of the teaching and supervisory staffs" include substitutes employed by school districts?

The question you ask has unusual importance by reason of the war, since many substitutes who are taking the place of those absent in military service, while replacements in designation, are in effect regulars, due to the lengthy period they will be required to serve as a result of the war.

The purpose of the legislature in enacting this law is expressed in the first portion of section 1, which reads as follows:

"In order to provide for the maintenance and support of a thorough and efficient public school system and to meet the increased cost of living during the present emergency and to enable the teachers of this Commonwealth who are paid in the lower salary brackets to maintain for themselves and their families a decent standard of living, the salaries of the following members of the teaching and supervisory staffs of each school district are hereby increased by the following amounts . . ."

The provisions of the Act of April 6, 1937, P. L. 213, as amended, commonly known as the Teachers' Tenure Act, amended section 1201 of the School Code of May 18, 1911, P. L. 309, 24 PS §1121, and this section was further amended by the Act of June 20, 1939, P. L. 482, Act of May 21, 1943, P. L. 273, to read as follows:

"The board of school directors in every school district in this Commonwealth shall employ the necessary qualified *professional employes, substitutes, and temporary professional employes* to keep the public schools open in their respective districts in compliance with the provisions of this act. . . .

"The term 'professional employe,' as used in this act, shall include teachers, supervisors, supervising principals, principals, directors of vocational education, dental hygienists, visiting teachers, school secretaries, the selection of whom is on the basis of merit as determined by eligibility lists, school nurses who are certified as teachers and any regular full-time employe of a school district who is duly certified as a teacher.

"The term 'substitute' shall mean any individual who has been employed to perform the duties of a regular professional employe during such period of time as the said regular professional employe is absent on sabbatical leave or for other legal cause authorized and approved by the board of school directors or to perform the duties of a temporary professional employe who is absent, or who has been employed with the approval of the district or county superintendent and of the Superintendent of Public Instruction, during the present wartime emergency and for a period not longer than one year beyond the cessation of hostilities, to fill a vacancy until an acceptable qualified teacher can be obtained.

"The term 'temporary professional employe' shall mean any individual who has been employed to perform, for a limited time, the duties of a newly created position or of a regular professional employe whose services have been terminated by death, resignation, suspension or removal. . . .

"*Temporary employes shall for all purposes, except tenure status, be viewed in law as full-time employes,* and shall enjoy all the rights and privileges of regular full-time employes, and the Commonwealth shall pay

to the school district for each temporary employe the same per centum or share of salary, provided by law, as in the case of professional employes; and in cases of temporary employes of approved local or joint vocational industrial, vocational home economics, and vocational agricultural schools or departments, the school district shall be reimbursed, as provided by law, for each of their full-time salaries, just as though they were professional employes. *Such reimbursement from the Commonwealth shall not be made for substitutes except in cases of sabbatical leave.*" (Italics supplied.)

The phrase "members of the teaching and supervisory staff" is not defined in the School Code or any other act of the General Assembly. The phrase appears to have been used for the first time in the Act of April 28, 1921, P. L. 328, amending the Act of May 18, 1911, P. L. 309, known as the School Code, 24 PS §1, et seq. Section 1210 of the School Code, clause 19(a), as amended by the Act of August 5, 1941, P. L. 789, 24 PS §1180, reads as follows:

"Of the salaries herein provided for full-time teachers, supervisors, principals and all other full-time members of the *teaching and supervisory staff* in the public schools of the Commonwealth, the Commonwealth shall pay . . . " (Italics supplied.)

In section 1210, clause 20, as amended by the Act of July 12, 1935, P. L. 993, 24 PS §1181, the following appears:

"On or before the first day of November of each year, each school district of the first and second class, and each school district of the third class having a district superintendent, shall file a certificate with the Superintendent of Public Instruction, in such form as he may prescribe and on blanks to be furnished by him, showing the number of full-time teachers, supervisors, principals and other full-time members of the *teaching and supervisory staffs,* the number thereof employed in elementary schools and the number employed, respectively, in three and four year junior

high schools, the certificates held by each, and the compensation paid each for the current school year, and showing further the number of part-time teachers, supervisors, and principals employed in extension schools and classes established as herein provided, the certificates held by each, and the compensation paid each during the preceding school year." (Italics supplied.)

The phrase is also used in clause 25 of section 1210 of the School Code, as well as in clause (k) of section 1216. There is nothing in the Act of May 28, 1943, supra, which indicates that the substitute teacher is to be excluded from the benefits of its provisions. The substitute teacher is as much affected by the increased cost of living as the professional employe. It is as important for substitute teachers to maintain for themselves and their families a decent standard of living as it is for other members of the teaching profession. The school districts will be seriously handicapped in obtaining and retaining substitute teachers if these are to be paid less than the regular teachers.

The School Code has defined "substitute", "temporary professional employe", and "professional employe", and it would seem that if only certain of these employes were to come within the terms of the Act of 1943, the General Assembly would have used one or more of these definite terms. However, the General Assembly used none of these terms, but did use the more general term "member of the teaching and supervisory staff", which is a very broad term and which, in our opinion, is all-inclusive, unless there is something in the act which narrows its construction. The only exceptions that we can find in the act do not include substitute teachers.

For instance, the Act of May 28, 1943, supra, reads in part as follows:

"Members of the teaching and supervisory staffs of a school district, who are not employed by the district for the whole of either of the school terms for

which an increase in salary is provided for hereby, shall receive only the proportionate amounts payable for the payroll periods during which he or she has been employed by the district."

This provides for a situation where a teacher enters upon his or her duties at some time other than the beginning of a term.

The act increases the salaries for each member of the teaching and supervisory staff who, at the end of the school term 1941-42, received a salary at the rate of $1,000 and more, up to and including those who received $3,499. This schedule by its very terms excludes both those who were receiving less than the minimum and those who were receiving more than the maximum. Having made these exceptions, it would seem that if the substitute teacher were to be excluded the General Assembly would have so provided, and in the absence of any condition, proviso, or other exception we cannot read such exception into the act.

The term "substitute" is also used in the Act of August 1, 1941, P. L. 744, which is entitled:

"An act requiring school boards in all school districts, and boards of directors of all vocational school districts, to grant leaves of absence to all school employes who shall volunteer or be called for military or naval service in time of war or during a state of national emergency; preserving certain contracts, salaries, increments, retirement rights, seniority, State contributions and grants to local school boards, eligibility lists, reemployment; authorizing school boards and boards of directors of vocational schools to employ substitutes in place of such employes; requiring school districts and vocational school districts to make additional payments into the School Employes' Retirement Fund; reserving all rights and privileges of employes granted leaves of absence under the provisions herein, and superseding or repealing all contrary laws."

This act has been the subject of previous opinions: Retirement Payments by School Employes on Leave (No. 1), 47 D. & C. 673; and Retirement Payments by School Employes on Leave (No. 2), 48 D. & C. 47. Section 4 of said act reads:

"During the period of said leave of absence, if a qualified substitute is employed, the Commonwealth shall pay the school board or board of directors of vocational schools the full amount of State contribution or grant as if the said employe were performing his regular school duties for the said school board or board of directors of vocational schools."

This act shows a definite intention upon the part of the General Assembly to see to it that the school districts will not suffer financial loss by reason of school teachers entering the military services. Many substitutes are engaged to replace men in the military services.

It is well to keep in mind that the General Assembly made an appropriation in the General Appropriation Act of June 4, 1943 (Act 77-A), of a definite amount to take care of these increases, and that if the appropriation is insufficient to pay the specifically scheduled increases reductions shall be made on a uniform percentage basis. The Appropriation Act of June 1, 1943, supra, reads in part:

"For reimbursing school districts upon the increases in salaries of school teachers as provided in legislation enacted by the General Assembly session of one thousand nine hundred and forty-three the sum of twenty-four million three hundred thousand dollars ($24,-300,000)."

There is nothing in this act which would exclude substitute school teachers.

Therefore, we see no intent by the General Assembly to exclude the substitute teacher. We do see, however, an effort to adjust on a proportional basis the salary of a teacher employed for a part of the school term with

that of a teacher who serves for the full term. The mention of these exceptions excludes any not mentioned. Accordingly, we conclude that substitute teachers are members of the teaching and supervisory staff and are therefore within the provisions of the act under discussion.

2. The act provides that certain salaries for the school terms 1943-44 and 1944-45 are to be increased by specific amounts which are determined by the amounts of such salaries at the close of the 1941-42 school term. The act also provides that the required increases shall be in addition to any increments which may accrue under the law. In determining the salary required for any particular individual for the school terms 1943-44 and 1944-45, do we add the indicated cost-of-living increase to the 1941-42 salary and then add any increments which have accrued under the law, or do we add the cost-of-living increase to the salary being paid the individual for the school year 1942-43 and then add any mandated increments which have accrued?

Inter alia the act reads as follows:

". . . the salaries of the following members of the teaching and supervisory staffs of each school district are hereby increased by the following amounts: For each of the two school terms of one thousand nine hundred forty-three, one thousand nine hundred forty-four, (1943-44), and one thousand nine hundred forty-four, one thousand nine hundred forty-five, (1944-1945); To members of the teaching and supervisory staffs who at the end of the school term one thousand nine hundred forty-one, one thousand nine hundred forty-two, (1941-1942), received salaries. . . ."

The legislature provided that the temporary increases in salary were to be made in accordance with the provided schedule. The increases set forth in detail in section 1 of the act are in addition to the salaries received by members of the teaching or supervisory

staff for the school year 1941-42, if employed by a school district during that year. To this amount are to be added any increments to which any member of the teaching or supervisory staff may become entitled under existing laws, as reference to section 1 indicates that the legislature, among other things, provided that:

". . . The additional amounts of salary provided for hereby shall not include any increments any such member of the teaching or supervisory staffs may become entitled to under existing law during the period covered by the provisions of this act but they shall also be entitled to the full amount of such increments."

Therefore, the increased cost-of-living percentage is to be added to the 1941-42 salary, to which also is to be added any mandated salary increases which have accrued under the law.

3. The act refers to members of the teaching and supervisory staff who were not employed by a school district until after the end of the school term 1941-42, and provides that the additional amounts for such persons shall be paid on the basis of the minimum salary prescribed by section 1210 of the school laws. Does the expression "who were not employed by a school district" mean not employed by the school district in which the teacher is employed for the school terms 1943-44 and 1944-45, or does it mean not employed in any school district?

In referring once more to section 1, we find in addition to its other provisions the following:

"In the case of members of the teaching or supervisory staffs who were not employed by a school district until after the end of the school term one thousand nine hundred forty-one, one thousand nine hundred forty-two, (1941-1942) the additional amounts hereinbefore provided for shall be paid on the basis of the minimum salary prescribed by section one thousand two hundred ten of the Public School Code of May eighteenth one thousand nine hundred eleven (Pamphlet Laws 309),

and its amendments, for the position held in the district and any part of any amount of permanent salary above the amount of such minimum salaries that is paid by any school district may at the discretion of the board of school directors (or board of public education) be deducted from the amount of the increase provided for hereby. All deductions so made shall apply uniformly to all members of the teaching and supervisory staffs in the district. . . ."

Our concern in this inquiry is the intention of the legislature in using the words "who were not employed by a school district until after the end of the school term . . . 1941-1942". In referring to section 1210, supra, of the School Code, the legislature was referring to what is commonly known as the Edmonds Act, which provides the minimum schedule of salaries payable to the employes of the teaching and supervisory staffs of the various school districts in this Commonwealth. In doing this the legislature must have intended to mean, and was referring to, members of the teaching and supervisory staff who were not employed by the school district in question during the school term 1941-42, because the Edmonds Act provides the minimum schedule of salaries only in those cases where members of the teaching or supervisory staff are employed by a new school district. Such a conclusion is in perfect keeping with the purpose of the legislature, not only to provide against the increased cost of living, but also to keep members of the teaching and supervisory staff in their positions with their respective school districts and to prevent the law of supply and demand from controlling the situation.

Accordingly, we must interpret these words to mean members of the teaching and supervisory staff who were not employed by the particular district.

4. In the case of members of the teaching or supervisory staff who were not employed by a school district until after the end of the 1941-42 school term, the act

states that any amount of permanent salary above the amount of such minimum salary that is paid by a school district may, at the discretion of the board of school directors, be deducted from the amount of the increase provided for in the Act of 1943. However, the further statement is made that all deductions so made shall apply uniformly to all members of the teaching and supervisory staff in the district. We raise a question as to whether we should interpret this literally, or if we should interpret it to mean that all deductions so made shall apply uniformly to all members of the teaching and supervisory staff who were not employed in the district until after the end of the 1941-42 school term?

This question concerns itself with an interpretation of section 1, which was quoted under your third inquiry. It is our opinion that the legislature intended to refer only to such employes of the teaching and supervisory staff as were not employed by a school district until after the end of the 1941-42 school term. This conclusion is strengthened by the fact that the legislature, insofar as these "new" members of the teaching or supervisory staff are concerned, provided that "any amount of permanent salary above the amount of such minimum salary that is paid by any school district may, at the discretion of the board of school directors (or board of public education), be deducted from the amount of the increases provided for hereby".

The fact that there exist contract rights of the members of the teaching or supervisory staff of school districts which are protected by the Teachers' Tenure Act makes it obvious that the legislature could be referring only to new members of the teaching or supervisory staff hired by a school district after the end of the school term 1941-42. It is also to be noted that if such deductions are made by a school district they must be made uniformly. This means "uniformly among all new members of the teaching or supervisory staff" because our situation in this respect is not controlled

by the same uniformity rule as that which obtains in tax matters. See Smith v. Philadelphia School District et al., 334 Pa. 197 (1939).

5. Our records indicate that there were a few teachers employed in school districts in Pennsylvania during the school year 1941-42 who were receiving salaries of less than $1,000. This is because subsection 13 of section 1210 of the School Code provides that teachers with substandard certificates receive $75 or $85 per month according to the type of substandard certificate held. If such teachers are employed during the school terms 1943-44 or 1944-45, are the salaries which the respective districts are required to pay them during these school terms affected by the provisions of the act?

The legislature made no mention in the act which we are considering of teachers whose salaries are less than $1,000 a year. The temporary salary increases are granted to those teachers mentioned in the schedules set forth in the act.

Interpretation of laws is governed by well-recognized principles of statutory construction; and no principle is more clearly established in our jurisprudence in ascertaining legislative intent than the maxim "Expressio unius est exclusio alterius", which in 31 C. J. 396 is translated as meaning, "The inclusion of one is the exclusion of another".

It is, therefore, our opinion and you are accordingly advised:

1. The term "members of the teaching and supervisory staffs of each school district" as used by the legislature in the provisions of the Act of May 28, 1943, P. L. 787, includes "substitute teachers".

2. The cost-of-living increases set forth in the schedule contained in the act are to be added to the 1941-42 salary received by a member of the teaching or supervisory staff, and to this added any mandated salary increases which have accrued under the law.

3. The term "who were not employed by a school district until after the end of the school term . . . 1941-

1942", as used in the act, refers to members of a teaching or supervisory staff who were not employed by the particular school district prior to and during the school term 1941-42.

4. The legislature, by providing that any amount of permanent salary above the amount of such minimum salary paid by a school district may, at the discretion of the board of school directors, be deducted from the amount of increase provided for in said act, intended that such deductions must be made "uniformly" among all new members of a teaching or supervisory staff.

5. Teachers who have been receiving less than $1,000 a year as salary from a school district are not within the terms of the Act of May 28, 1943, P. L. 787, and therefore not entitled to any salary increases thereunder.