## Wolf v. Gettysburg Borough School District

*Lewis F. Adler* and *J. Francis Yake, Jr.*, for plaintiff.
*Swope, Brown & Swope*, for defendant.

SHEELY, P. J., February 10, 1945.—The facts, stated briefly, are that plaintiff had a contract with defendant school district to teach in the high school at a salary of $1,800 per year, which was in excess of the minimum salary prescribed by the Edmonds Act. Subsequently, the school district adopted a salary schedule under which teachers who did not have a college degree should be paid the minimum salary prescribed by the Edmonds Act, while teachers with a college degree should be paid a higher salary with additional increments based upon additional scholastic credits, etc. An

opportunity was given to enable those without a college degree to secure one before the salary schedule was made effective. Plaintiff did not have the scholastic requirements to justify more than the minimum salary under the new schedule and, when the schedule was made effective, the school board passed a resolution reducing his salary from $1,800 per year to $1,600 per year. Plaintiff has accepted each instalment of salary under protest and has requested the school board to restore his former salary, but it has failed to take any action on his request. No hearing was held by the board on its resolution reducing plaintiff's salary.

The question agreed upon to be submitted to the court in the case stated is that, if the court be of the opinion that defendant school district was not entitled to reduce the salary of plaintiff, judgment should be entered for plaintiff, but, if the court be of the opinion that defendant school district was entitled by law to reduce the salary, judgment should be entered for defendant. This case stated eliminates from consideration the question of the effect of plaintiff's acceptance of salary under protest and confines the question solely to the legality of the reduction of plaintiff's salary.

Plaintiff contends that the reduction of salary was a "demotion in salary" prohibited by section 3 of the Teachers' Tenure Act of April 6, 1937, P. L. 213, and was therefore invalid. Defendant contends that the adoption of the salary schedule was a proper exercise of its discretion in administering school policy and that the reduction in salary was not a "demotion in salary" since it applied to all teachers not having a college degree.

If the reduction of plaintiff's salary did not constitute a demotion, section 3 of the Tenure Act would not apply: Smith v. Philadelphia School District et al., 334 Pa. 197, 206; Walsh's Appeal, 114 Pa. Superior Ct. 342. This is the only question to be determined in this case. For reasons which we will hereinafter discuss,

the questions of the authority of the school board to adopt a salary schedule, or to make it apply to plaintiff, or the reasonableness of the salary schedule, are not, and could not be, involved in this case.

The reduction of plaintiff's salary was a "demotion in salary". In Smith v. Philadelphia School District,. 334 Pa. 197, it was held (p. 205) :

"The word 'demotion' as used therein [section 3 of the Teachers' Tenure Act] means a reduction of particular teachers in salary or in type of position as compared with other teachers having the same status".

In that case the salaries of all teachers were reduced because of the district's financial difficulties, and the court said: "But where there is a general adjustment of the salaries of all teachers with no consequent individual discrimination, the relative grade or rank of any particular teacher remains the same, and there has been no 'demotion' of any particular teacher within the meaning of the word as there used." To the same effect was Walsh's Appeal, 144 Pa. Superior Ct. 342, where the salaries of all teachers were reduced by a percentage.

In the present case, however, the salary reduction did not apply to all teachers in the district or even in the high school. It applied only to those teachers who did not have a college degree. Plaintiff is the holder of a certificate entitling him to teach in the high school just as teachers holding college certification are entitled to teach there. Prior to the adoption of the salary schedule, no distinction or difference as to pay was made between those holding college certificates and those holding certificates of lower grade, and defendant school district had determined that plaintiff was entitled to more than the minimum salary prescribed by the Edmonds Act.

"The laying down of the same requirements for all teachers and principals in high schools would indicate that such employment is on a parity": Wesenberg Case, 346 Pa. 438, 443.

The salary schedule set up that distinction or classification for salary purposes. When, therefore, the school board made the salary schedule effective and reduced plaintiff's salary to conform to it, it did reduce him in salary as compared with other teachers having the same status, i. e., the status of teachers qualified to teach in the high school whom the board had determined were entitled to more than minimum salaries.

This was not a general adjustment of the salaries of all teachers as in the Smith case or in the Walsh case. This was an adjustment of those salaries which did not conform to the salary schedule, and it applied to only three teachers of the entire staff. The relative grade or rank of those teachers as to salaries did not remain the same; prior to the reduction they held equal salary rank with other teachers; after the reduction they held lower rank. As to each of them, and as to the group, there was discrimination. "To discriminate" means "to distinguish; differentiate; to make a difference or distinction (between); make or show a difference (in favor of or against)". It does not necessarily mean an unjust or unfair distinction. The reduction of salary of one group of teachers but not of another group makes a difference or distinction between them. In fact, there was discrimination between the three teachers affected by the resolution reducing salaries. Two of them were reduced from $1,800 to $1,600, while one was reduced from $1,650 to $1,600. Consequently the reduction of plaintiff's salary was a "demotion" within the meaning of the Teachers' Tenure Act.

It is necessary to note that the Teachers' Tenure Act of April 6, 1937, P. L. 213, does not absolutely prohibit a demotion in salary or position, just as it does not absolutely prohibit the dismissal of a teacher. It provides:

". . . there shall be no demotion of any professional employe, either in salary or in type of position, without the consent of the said employe, or if such consent is

not received, then such demotion shall be subject to the right to a hearing before the board of school directors . . . and an appeal in the same manner as hereinbefore provided in the case of the dismissal of a professional employe."

In the case of dismissals, the act provides the causes for which a teacher may be dismissed and the procedure to be followed. In the case of demotion, it merely prescribes the procedure. It would seem to follow that a teacher might be demoted, in the discretion of the school board, for any proper cause, subject to a review upon appeal to prevent an abuse of discretion or arbitrary discrimination. See Smith v. Philadelphia School District et al., 334 Pa. 197, 205.

But, where the teacher does not consent, the demotion can take place and be effective only after notice and an opportunity for hearing before the school board. The provision of the statute as to notice, etc., must be followed: Langan v. Pittston School District et al., 335 Pa. 395, 397; Smith v. Philadelphia School District et al., 334 Pa. 197, 205. In the latter case, the court said:

"Section 3 of the Tenure Act requires that where there is a 'demotion in salary' there shall be a hearing in the same manner as provided in case of dismissal. Section 2 sets forth the procedure to be followed in conducting such hearings. It is there provided that charges shall be filed against the teacher and that at the hearing evidence shall be presented relative to those charges. The purpose of the hearing under this section is to protect the teachers from arbitrary discrimination by being subjected to unfounded or inadequate charges."

In the Teachers' Tenure Act Cases, 329 Pa. 213, 221, Chief Justice Kephart said:

"The Act . . . further provides that any contract then 'in effect' shall not be terminated by the school boards except in accordance with its provisions, and it forbids, in Section 3 amending Section 1205-A of the Code, the demotion of any professional employee either

in salary or position without his consent or, if that is refused, notice and hearing subject to appeal."

In Streibert v. York School District Directors, 52 York 203, the question of the duty of the school board to afford the teacher an opportunity for hearing in case of demotion, and before reducing the salary, was squarely raised. In his opinion, Judge Sherwood said:

". . . we find that the language used in Section 1205A did not in any way differentiate between dismissals and demotions. The act protects the teacher from both dismissal and demotion. In order to accomplish either, it is necessary for the school district to act in accordance with the procedure prescribed by the act. This . . . the school board did not do. It afforded her no opportunity to be heard. It did not inform her of the cause . . ."

On appeal (339 Pa. 119, 124), the Supreme Court said:

"The answer to this [contention by the school district that it had reduced plaintiff's salary] is that while her salary is subject to reduction for proper reasons, such action can only be taken in compliance with the provisions of the Act." See also Appeal of the School District of the Borough of Jermyn, 43 Lacka. Jur. 161.

The question argued at length by the school district as to the propriety of the salary schedule is not at issue in this proceeding, nor do we think it properly could be. If the plaintiff had been afforded a hearing as required by the Tenure Act, the question of the propriety of the salary schedule and the authority of the board to adopt it would have been an issue in that hearing and testimony could have been taken by both sides. From the decision of the board, the question could have been appealed to the Superintendent of Public Instruction with the right of further appeal to the court. In that proceeding, the court would have had the benefit of the superintendent's opinion and, as the question relates to school policy, that would have been very valuable. Since the Tenure Act provides a method of procedure in

cases of dismissal or demotion, the parties are compelled to follow that procedure, and the questions which would properly be raised there cannot be raised in an action of assumpsit. The only question before us, then, is whether the school board did properly demote plaintiff in salary. It follows from what we have said that the school board could not lawfully reduce plaintiff's salary because it failed to do so with his consent or by the method prescribed by the Teachers' Tenure Act.

This question is purely a legal question and does not involve interference with the policy of the board "by substituting therefor the discretion of the judiciary" as suggested by defendant school district. The courts have consistently held that "The fundamental public policy, expressed in the Constitution and underlying school laws, is to obtain a better education for the children of the Commonwealth": Walker's Appeal, 332 Pa. 488; and that public school policies are left to the discretion of the administrative bodies to meet changing times and educational concepts: Wilson et ux. v. Philadelphia School District ,et al., 328 Pa. 225, 236. It has further been held that it was not the intention of the legislature to have the Tenure Act interfere with the control of school policy: Ehret v. Kulpmont Borough School District, 333 Pa. 518, 524. Thus, the Tenure Act does not prevent a school district from adopting such reasonable rules and regulations as it deems proper in managing its affairs and the conduct of its teachers, such as requiring residence within the district: Ganaposki's Case, 332 Pa. 550; Jones v. Kulpmont Borough School District, 333 Pa. 581, 583; Sinton's Case, 151 Pa. Superior Ct. 543, 548; or adopting a system of classifying teaching assignments for the purpose of appointment of teachers: Walker et al. v. Scranton School District et al., 338 Pa. 104, 108. In the latter case, the court said: ". . . It cannot reasonably be argued that the Legislature intended by section 2(b) [Tenure Act] to impair the beneficial results of a sound and sensible plan

of school management." The power to adopt and enforce reasonable rules and regulations regarding the management of school affairs is specifically provided by the School Code as amended by section 9 of the Act of May 29, 1931, P. L. 243, 24 PS §338, and the authority to adopt salary schedules is likewise specifically provided by section 1210-9 of the code. See Paisley v. Mauch Chunk Township School District, 134 Pa. Superior Ct. 173. Whether a salary schedule can be applied so as to reduce salaries of particular teachers is not before us.

As pointed out above, the Teachers' Tenure Act was not designed to prevent school boards from performing any of these functions. It was enacted under the general direction of the Constitution to the legislature (article X, sec. II) to "provide for the maintenance and support of a thorough and efficient system of public schools", and its purpose "was to maintain an adequate and competent teaching staff, free from political and personal arbitrary interference, whereby capable and competent teachers might feel secure and more efficiently perform their duty of instruction": Teachers' Tenure Act Cases, 329 Pa. 213, 231; Walker's Appeal, 332 Pa. 488; Ehret v. Kulpmont Borough School District, 333 Pa. 518, 524. To accomplish that purpose, the act prescribed certain safeguards as to dismissals.

"To prevent a school district from attempting to avoid the tenure of office thus guaranteed by reducing the salary of particular teachers to such a low amount that they would be forced to resign . . . demotions in position or salary could be made only by complying with the provisions of that section [3]": Smith v. Philadelphia School District et al., 334 Pa. 197, 205.

Section 3 of the Teachers' Tenure Act may be said to be procedural, and in all cases of demotions the teacher affected must be given the opportunity to be heard. In this case, plaintiff has had no opportunity to

present his side of the case to the school board, and as to him the reduction in salary was therefore unlawful.

And now, February 10, 1945, pursuant to the agreement stipulated in the case stated, judgment is entered in favor of plaintiff and against defendant for the difference between the salary of $1,800 a year due plaintiff and the salary of $1,600 a year paid him from the beginning of the school year 1941-1942 to the present date; the amount of said judgment to be liquidated by the prothonotary after counsel for plaintiff and counsel for defendant have submitted a calculation of said amount within 10 days of this date.