Rice v. Ford et al.

544

*James J. Rattigan* and *Cletus C. Kilker*, for plaintiff.

*John B. McGurl* and *H. G. Stutzman*, for defendants.

DALTON, J., May 17, 1954.—Plaintiff brought mandamus to compel her reinstatement as a teacher in the Minersville School District. Her complaint alleged that in September 1926 she was elected a school teacher for the school district and taught continuously therein from the time of her election until June 26, 1941; that she was a professional employe of the school district on April 6, 1937, the effective date of the Tenure Act of April 6, 1937, P. L. 213; that pursuant to the provisions of the Tenure Act the school district entered into a written contract with her as a professional employe on or about May 6, 1937; that the contract has continued in full force and effect to the present date; that on or about June 26, 1941, the school directors suspended her; that on or about June 11, 1951, a vacancy existed in the teaching staff of the school district, at which time she was the only suspended professional employe available who was properly certified to fill such vacancy; and that in violation of plaintiff's rights the school directors appointed one Caroline Warner to fill the vacancy.

The only defense set up in the answer was "that said contract did not remain in full force and effect for the reason that on November 6, 1941, the plaintiff . . . resigned her position as a teacher in the Minersville School District, effective September 1, 1941, which resignation remains in full force and effect."

The contract, which was admittedly entered into between the school district and plaintiff, was in the form prescribed by section 1205 of the School Code of May 18, 1911, P. L. 309, as amended by the Tenure Act of April 6, 1937, P. L. 213, sec. 2, 24 PS §1126.

It contained, inter alia, the following statutorily prescribed covenants:

"And it is further agreed by the parties hereto that none of the provisions of the act may be waived either orally or in writing and that this contract shall continue in force year after year . . . unless terminated by the professional employee by *written resignation presented sixty days before resignation becomes effective*, or by the Board of School Directors by official written notice presented to the professional employee." (Italics supplied.)

Section 6 of the Tenure Act of April 6, 1937, P. L. 213, provided as follows:

"No contract in effect at the enactment of this act shall be terminated, except in accordance with the provisions of this act."

Section 1205 (*b*) of the School Code of May 18, 1911, P. L. 309, as amended by section 2 of the Tenure Act of April 6, 1937, P. L. 213 and by section 2 of the Act of June 20, 1939, P. L. 482, made provision for suspension of professional employes for certain reasons and provided further:

"Such professional employes shall be reinstated in the inverse order of their suspension. No new appointment shall be made while there are suspended professional employes available, who are properly certified to fill such vacancies."

Similar provisions are contained in the Public School Code of March 10, 1949, P. L. 30, sec. 1125 (*c*), 24 PS §11-1125 (*c*).

The issue was tried before a jury. The trial judge being of opinion that no competent evidence had been adduced to establish the alleged resignation, directed a verdict for plaintiff. Defendants thereupon filed motions for judgment n. o. v. and for a new trial.

The motion for judgment n. o. v. cannot be entertained, since defendants failed to present at the trial

a written request for binding instruction: Essex Packers, Limited, v. Kisecker, 373 Pa. 351.

On their motion for a new trial defendants contend that plaintiff failed to make out a prima facie case. They point out that no evidence had been offered to prove plaintiff's averment that she was the only suspended employe available properly certified to fill the vacancy. But considering the manner in which the case was tried, defendants are not now in a position to complain of that defect. Counsel for defendants repeatedly stated to the trial judge that the only issue was whether plaintiff had resigned on November 6, 1941. He specifically conceded that plaintiff was properly certified and did not question her availability except to contend that if she was a *resigned* employe she was not an "available" *suspended* employe. Nor did he contend that there were other employes, who had been previously suspended, who were available and properly certified. The record, in that respect, discloses the following colloquy:

"Mr. Kilker: You don't contend there are any others available. The question is whether or not Mrs. Rice—

"Mr. Stutzman: I am informed there were others available at that time.

"Mr. Kilker: Who had been formerly suspended by the Minersville School District?

"Mr. Stutzman: *They weren't suspended. They weren't teaching before.*"

Where there is no real controversy at the trial as to a particular allegation, and both sides proceed throughout as though it were an admitted fact, it is too late after verdict to complain that no evidence was offered in support of the allegation: Skocich et al. v. Boutell Driveway Company, 317 Pa. 26, 27-28; Capozi v. Hearst Publishing Company, Inc., 371 Pa. 503, 509.

Defendants also contend that plaintiff failed to prove that her contract was in full force and effect at

the time the vacancy was filled. Under the Tenure Act teachers' contracts are of permanent duration, unless terminated in accordance with the provisions of the act: Smith v. Philadelphia School District et al., 334 Pa. 197, 205; Com. ex rel. Wesenberg v. Bethlehem School District et al., 148 Pa. Superior Court 250, 256. Since plaintiff's contract, in its nature and by its express terms, was a continuing one, there was a presumption that it continued to exist until competent evidence to the contrary appeared. A status or relationship once shown to exist is presumed to continue in the absence of evidence to the contrary: Zuback v. Bakmaz, 346 Pa. 279, 282; Morse Boulger Destructor Company v. Arnoni, 376 Pa. 57, 65-66. True, presumptions in themselves are not evidence, but they *are* "guide posts indicating whence proof must come", and if not rebutted, may be sufficient to make out a prima facie case: McDonald, admx., v. Pennsylvania Railroad Co., 348 Pa. 558, 566-567. Plaintiff, armed with the presumption of continuance of tenure status, made out a prima facie case on the admissions in the pleadings and since the trial judge was of opinion that no competent evidence had been adduced to rebut her case thus established, a directed verdict naturally followed.

The remaining questions raised by the motion for a new trial relate to the trial judge's rulings on the evidence offered by defendants. In considering those questions, it is imperative to keep in mind that the admissibility of evidence does not depend on its tendency to prove a defense which might have been, but was not, pleaded. Its admissibility depends, rather, on its relevancy to the issues raised by the pleadings. As was said in Otto, admx., v. Western Saving Fund Society, 343 Pa. 615, 620:

"The issues of a case are defined by, and confined to the pleadings. . . . In determining the issues made in

the case, the pleadings, and not the evidence must be looked into. . . ."

The *only* issue raised by the pleadings in the present case was whether plaintiff had terminated her contract by *resignation*. When that fact is kept in mind, it is apparent that this case is not controlled by Jacobs v. Wilkes-Barre Township School District, et al., 355 Pa. 449, on which defendants so strongly rely. No question of resignation was involved in the Jacobs case. On the contrary, the question was one of abandonment. Resignation differs from abandonment "in that resignation is a *formal* relinquishment, while abandonment is a voluntary relinquishment through *nonuser*"; 67 C. J. S. 225, Officers, §55(a). In the Jacobs case, defendant school district both pleaded and proved facts from which the court spelled out an abandonment of her contract by the teacher plus an acquiescence therein by the school district. The court said (page 454) : "Together, these acts constituted a *mutual rescission.*" (Italics supplied.) The precise holding of the case is that the statutory procedure does not apply where the contract is terminated by mutual rescission. In reaching that conclusion, the court made a clear distinction between a mutual rescission and a unilateral termination of the contract, whether by the school district or by the teacher, for it said (page 453) :

"Provision is thus made whereby termination of the contract may be effected either by the professional employee or by the school board. When, therefore, one of the parties seeks to terminate the contract, the *respective statutory provisions apply.* Those situations are not here involved." (Italics supplied.)

In the case at bar, there was not, and could not have been, any question of abandonment, for plaintiff, having been suspended, had no active duties to abandon. Nor does the instant case involve any question of ac-

quiescence by the school board, amounting to consent to a mutual rescission. No such defense was pleaded. On the contrary, the defense was put upon the bald and single ground that the contract had been terminated by the unilateral act of plaintiff, to wit, *by resignation on November 6, 1941*. Since that was the sole defense pleaded, defendants were necessarily limited in their proof to that defense: Pa. R. C. P. 1032; Ochs v. Reynolds, 155 Pa. Superior Ct. 469, 473; Megliss v. Bartletta et al., 159 Pa. Superior Ct. 308, 311.

With that principle in mind, we turn now to defendant's evidence. On *October 31, 1941*, plaintiff sent a letter, identified as exhibit no. 1, to the secretary of the School Employes Retirement Board, wherein she stated:

"Since I am no longer a teacher in the Pennsylvania schools I wish to withdraw my retirement fund as soon as possible. Will you kindly send me the necessary application blanks?"

On November 6, 1941, she executed and mailed to the retirement board a formal application for return of her contributions. The application was on a printed form provided by the retirement board. After the words, "Reason for Refund," she wrote "Withdrawal from Service" and after the printed words "Effective Date of Resignation" she wrote "Sept. 1, 1941." The application was approved by E. A. Brady, the district superintendent of schools, in a space provided on the form for that purpose.

At the trial, defendants squarely took the position, not that the application for return of contributions embodied an admission of an antecedent resignation, but that it was in and of itself a resignation in praesenti, as of November 6, 1941, retroactively effective September 1, 1941, and that it became operative as such when it was submitted to the district

superintendent of schools for his approval. The trial judge excluded the exhibit because he was of opinion that it was not competent evidence for the purpose offered. An offer of proof by the district superintendent, based on the same theory, was also refused.

There is nothing in the School Employes' Retirement Law of July 18, 1917, P. L. 1043, 24 PS §§2081 et seq., or in the School Code of 1911, which provides that a withdrawal of contributions to the retirement fund shall operate as a resignation or as an automatic surrender of teaching status. Cf. Walker v. Board of Education of School District of Wildwood, 120 N. J. L. 408, 199 Atl. 392, following Smith v. Carty et al., 120 N. J. L. 335, 199 Atl. 12.

Nor is the retirement board the proper body to whom a teacher's resignation must be presented. "A resignation tendered to an improper person or body is a nullity": 43 Am. Jur., Public Officers, §168.

"A teacher's contract of employment may be terminated by his resignation, but the resignation, in order to be effective, must be offered by the teacher with intent to terminate his employment, to the board or officer having the power to remove or dismiss . . .": 78 C. J. S., Schools and School Districts, §206.

"A mode of resignation prescribed by statute generally is exclusive": 67 C. J. S. Officers, §55(c). The relationship between teacher and school board is a qualified contractual status: Teachers' Tenure Act Cases, 329 Pa. 213, 226-228. The teacher is given a statutory right to terminate the contract by virtue of a power to do so expressly reserved in the statutory form of contract, which prescribes a "written resignation presented sixty days before resignation becomes effective." The law undoubtedly contemplates a written notice of termination of the contract to be served upon the other party thereto. "Presented"

naturally means presented to the board of school directors, in whom alone the contractual power of the district is vested and who alone have the power to appoint or dismiss.

The exhibit relied upon here as a resignation is not addressed to the school board but to the retirement board, a stranger to the contract of employment. It does not purport upon its face to be anything more than an application for a refund of contributions. So far as it speaks of resignation at all, it merely purports to represent to the retirement board, not the school board, that plaintiff had already resigned, effective September 1, 1941.

But let it be assumed, arguendo, that the application for return of contributions might have served as a resignation, if plaintiff had intended it to operate as such and had authorized the district superintendent to transmit it to the school board for that purpose. There was no offer to prove either of those things. There was no proof or offer of proof that she submitted the application to the district superintendent for his approval for any purpose other than to satisfy the requirements of the retirement board. Nor was there any proof or offer of proof that the district superintendent had in fact transmitted the application to the school board.

Defendants argue that the superintendent was an ex officio member of the school board and that therefore presentation to him was presentation to the board. That argument is untenable. No single member of the board is the board itself. It is well settled that school directors can act in an official capacity only when lawfully convened as a body: School District of the Borough of Leighton v. Fuess, 98 Pa. 600, 606-07; Butler et al. v. School District, 149 Pa. 351, 356; Roland v. Reading School District (No. 1), 161 Pa. 102, 106.

It is further argued that presentation to the superintendent was presentation to the school board because the superintendent was the board's agent. The district superintendent is the agent of the board insofar as supervision over instruction is concerned but he is not the board's agent as to any of the contractual or business affairs of the school district. Such agency is vested in the secretary of the board: School Code of May 18, 1911, P. L. 309, secs. 316, 318, 319, 24 PS §§273, 275-76. The secretary of the board is the proper agent upon whom notice of termination of a contract should be served: Harrisburg School District v. Eureka Casualty Co., 313 Pa. 342, 345. Here, there was no proof or offer of proof that the alleged resignation had ever been transmitted, either directly or indirectly, to the secretary of the board or to the board itself.

Notwithstanding the prohibition against waiver contained in the statutory form of contract, defendants further argue that the requirement for 60 days' notice could be waived by the board. But there was neither pleading nor proof of any such waiver. If the board could consent to a waiver of the requirement at all, it could only do so when acting as a body after the matter had been brought to its official attention. As was said in Downing v. Independent School District No. 9, Itasca County, 207 Minn. 292, 291 N. W. 613, 618:

"If a school board attempts to discharge a teacher, or if the teacher attempts to resign, contrary to the provisions of the act, such action is in either case ineffective until consent of the other party is obtained." Of course, the principle of estoppel may enter in certain circumstances, but in the instant case no such defense has been raised by the pleadings.

In direct opposition to their pleading and to the theory on which they tried the case, defendants now

urge that the application for return of contributions should have been admitted as evidence of a resignation sometime prior to September 1, 1941. In their answer to the complaint they definitely fixed November 1, 1941, as the date of resignation and thereby impliedly conceded that the contract had not been terminated prior to that date. Moreover, the exhibit was not offered at the trial for the purpose of proving an *antecedent* resignation. As was said in Pinter et al. v. James Baker, Inc., 272 Pa. 541, 547:

"The underlying principle is that the object for which a particular piece of evidence is submitted should be kept steadily in view, . . . because a party cannot offer evidence apparently for one purpose, and complain, when it has been rejected, that it was legitimate for some other."

Complaint is also made of the exclusions of exhibits nos. 2, 4 and 5. On June 12, 1951, the district superintendent wrote plaintiff a letter, identified as exhibit no. 3, wherein he stated:

"While you have indicated a desire to be considered an applicant for a teaching position in the elementary schools, there is no official written application from you on file. Will you kindly fill out the enclosed blank and return at your earliest convenience?"

The application form was executed by plaintiff under date of June 13, 1951, and returned to the school district. Thereafter, on June 28, 1951, the superintendent wrote and mailed to plaintiff another letter, identified as exhibit no. 5, wherein he stated, inter alia: "Your resignation changed your status from that created by suspension by the board. . . ." The superintendent, when called as a witness, was asked:

"Q. Mr. Brady, subsequent to the writing of these letters and the receipt of exhibit no. 4, did Mrs. Rice, and prior to the meeting of the board of July 11, 1951, did Mrs. Rice come to you, or communicate with you

concerning her alleged suspension as a teacher in 1941?"

An objection that the question was incompetent, irrelevant and immaterial under the pleadings in the case, was sustained. The exhibits were likewise excluded for the same reason.

If the intent of the proposed evidence was to establish an estoppel, waiver or laches, it was clearly inadmissible under the pleadings. None of those defenses had been pleaded, and consequently could not be resorted to: Pa. R. C. P. 1030, 1032.

It is argued that exhibits 3, 4 and 5 "might have thrown some light upon the plaintiff's intentions and understanding, insofar as her execution of exhibit no. 2 was concerned." The evidence might have been relevant for that purpose if it had been shown that exhibit no. 2 had been presented to the school board. But a mere intention or purpose to resign, which has not been consummated by presentation of a resignation to the proper body, is without legal effect. Defendants' proofs as to presentation had already failed before the exhibits were offered. Therefore, evidence of mere intent was immaterial.

Defendants further suggest that exhibits nos. 3, 4 and 5 were evidence of conduct and acquiescence from which the jury might have inferred an extrajudicial admission of the fact of resignation. That suggestion poses a fundamental question. If they are not able to prove and produce a written resignation presented to the school board, may they prove the fact of resignation by alleged admissions of plaintiff out of court?

The statute requires a resignation in writing. The requirement is one of substantive law and is akin to the statute of frauds. Extrajudicial admissions of fact by a party generally have the force of direct evidence, but that is merely a rule of evidence and must yield to the substantive law. We have found no case

which holds that extrajudicial admissions by a party are competent proof of a transaction which a statute requires to be embodied in a writing. On the contrary, it has been repeatedly held that a transaction within the statute of frauds cannot be proved merely by the admissions, out of court, of an alleged party thereto: Paull v. Mackey, 3 Watts 110, 125; McDonald et ux. v. Campbell, 2 S. & R. 473; Patterson v. Forry, 2 Pa. 456; Grant v. Levan, 4 Pa. 393, 425. Analogy may also be found in those cases which hold that where a statute requires action by a school board to be recorded in its minutes, deficiencies in the minutes cannot be supplied by the actions or declarations of the officials of the school district: Dyberry School District v. Mercer, 115 Pa. 559; Pittsburgh School District Appeal, 356 Pa. 282, 288-289; Strine v. Upper Merion Township School District, 149 Pa. Superior Ct. 612, 619.

In 32 C. J. S., Evidence, §785, it is said:

"Where the fact to be proved is required by law to be evidenced by a writing, parol evidence is of course not admissible unless the absence of the writing is satisfactorily explained."

That is said with reference to the best evidence rule. But what is more fundamentally involved, as Professor Wigmore has demonstrated, is one of the many ramifications of the parol evidence rule, which is actually a rule of substantive law. He points out that one of the applications of the parol evidence rule is where a statute requires an act to be done in writing. If not done in writing, such an act is legally ineffective: Wigmore on Evidence, 3rd ed., secs. 2401, 2454. (It is interesting to note that among the illustrations given is an act of Congress which requires a resignation of the office of President or vice president of the United States to be in writing.) Wigmore further says of such transactions:

"Where by law an act is *required to be done in writing*, i.e., is ineffective unless so done, the writing is of course the only permissible subject of proof. It is immaterial what the person intended; his act must be in writing and must be judged by the writing alone": Wigmore on Evidence, 3rd ed., sec. 2427.

Speaking of the parol evidence rule in general, he says:

"What the rule does is to declare that certain kinds of fact are legally ineffective in the substantive law; and this of course (like any other ruling of substantive law) results in forbidding the fact to be proved at all": Wigmore on Evidence, 3rd ed., sec. 2400.

He states the matter with even greater clarity in his Code of Evidence, where he says:

"For the purpose of giving jural effect to a transaction (act), the rules of substantive law declare what conduct or utterances shall be necessary and sufficient to constitute the transaction. No other conduct or utterance is material; therefore . . . no evidence to prove such other conduct or utterance will be admitted": Wigmore's Code of Evidence, rule 218, p. 449.

In the case at bar, the only permissible subject of proof was the fact of a written resignation presented to the school board, for without such writing there could be no legally effective resignation at all. No other proof could be substituted for it, so long as it was in existence and within the power of defendants to produce. The only writing alleged to constitute a written resignation was exhibit no. 2 and defendants' proofs in regard to that document had already failed when exhibits nos. 3, 4 and 5 were offered. It is clear that the latter exhibits, relating as they did to events 10 years after the date of the alleged resignation, were incompetent as substantive evidence of the fact to be established.

558

It appears, however, that it was not proper to place a limitation on the scope of examination when plaintiff was called as for cross-examination by defendants at the outset of their case. A party called as a witness by his adversary is to be considered as if originally offered and examined as a witness in his own behalf, and there may be drawn from him any facts or admissions which would corrobate the case of his adversary or weaken his own: Brubaker's Admr., v. Taylor, 76 Pa. 83, 86-87. If defendants had been permitted to pursue their line of questioning further, for aught we know they may have been able to elicit from plaintiff a direct and unequivocal admission that she actually had presented a written resignation to the school board. If she admitted that on the witness stand, it would be as conclusive and as fatal to her case as if she had set it forth in her pleading. See 31 C. J. S., Evidence, §381 (*d*). For this reason a new trial is granted.

And now, May 17, 1954, a new trial is granted.