In the Matter of GLADYS M. BEGGS et al., Respondents, against PAUL J. KERN et al., Constituting the Municipal Civil Service Commission of the City of New York, Appellants.

Argued December 2, 1940; decided December 31, 1940.

*William C. Chanler*, Corporation Counsel (*Robert H. Schaffer* of counsel), for appellants.

*Albert de Roode* for respondents.

LEHMAN, Ch. J. The city of New York, through the Department of Welfare, the Board of Child Welfare, the Department of Hospitals, and the Department of Correction, is performing social service in a wide field. It is common knowledge that relief of the needy, furnished through those departments, has constantly increased during the last decades, and especially since 1931. The number of social investigators employed in these departments has also increased greatly. While the number of social investigators employed in each department was small the positions held by them were not graded and so long as the positions were ungraded the head of the department had power to increase the salary of a social investigator or to assign to a social investigator powers and duties of direction and supervision of others in the same employ without any of the limitations imposed by law where there is promotion from one grade to another grade in the graded service. (*Matter of Amann*

v. *Finegan*, 253 App. Div. 364.) In the group of social investigators receiving salaries ranging from $1,800 to $2,400 some were acting as supervisors of other investigators in the same group. With the great increase in the number of social investigators has come realization of the advantages that might result in the administration of the work if the positions in the social service were classified, ranked and graded in accordance with the duties performed by the investigators and the salaries that should in the future be paid for the performance of varying duties.

In June, 1937, the Municipal Civil Service Commission took the first step towards classifying and grading such positions. That resolution provides:

" Resolved, That the competitive class of the Municipal Civil Service classification be and the same is hereby amended by including therein a new part to be known as

" ' Part (appropriate number), The Social Service (ERB or successor).

" ' Grade 1, Social Investigator, to but not including, $1,800 per annum.

" ' Grade 2, Assistant Supervisor, Medical Social Worker, Home Economist, $1,800 to but not including, $2,400 per annum.

" ' Grade 3, Supervisor, $2,400 to but not including, $3,000 per annum.

" ' Grade 4, Senior Supervisor, $3,000 to but not including, $4,200 per annum.

" ' Grade 5, Assistant Director, $4,200 to but not including, $6,000 per annum.

" ' Grade 6, Director, $6,000 or over.' "

By its terms that resolution was intended to apply only to employees of the Emergency Relief Bureau or its successor. Those employees had been appointed without competitive examination and had no rights of tenure to the positions which they held. (*Matter of Kraus* v. *Singstad*, 275 N. Y. 302.) In January, 1937, the Municipal Civil Service Commission adopted a resolution classifying and grading in similar manner positions in the Board of

Child Welfare. The employees of that Board, unlike the employees of the Emergency Relief Bureau, had been appointed after competitive examination and consequently had rights of tenure which could not be destroyed by classification and grading of positions in that department. (*Matter of Fornara* v. *Schroeder*, 261 N. Y. 363; *Matter of Sandford* v. *Finegan*, 276 N. Y. 70.) The salary grade which the Municipal Civil Service Commission might deem most appropriate in the light of past experience for those performing functions and holding the rank described in the parenthetical or office title of the grade might vary greatly from the salary paid to the incumbents of ungraded positions of similar rank or similar duties. In order to accord to such incumbents protection against loss of rank or salary through such classification and, at the same time, to preclude such persons from claiming increased salary or higher rank and duties, the Municipal Civil Service coupled in its resolution classifying and grading such positions the following conditions:

" 1. All persons of the title of Social Investigator and Special Investigator in the Board of Child Welfare lawfully performing the duties pertaining to such titles and receiving the salaries lawfully attaching thereto are hereby continued in such titles, duties and salaries regardless of the classification hereinafter set forth.

" 2. All supervisory positions in the Board of Child Welfare shall be filled by promotion examinations to be hereafter ordered and in accordance with the titles and grade ranges hereinbefore set forth.

" 3. No person shall perform supervisory duties in the Board of Child Welfare unless such person shall have passed the appropriate competitive examinations and been certified therefrom."

A similar resolution was adopted on January 12, 1938, extending the same classification and grading to the Department of Hospitals, subject to the same conditions.

By resolution adopted on September 21, 1938, the same classification and grading was extended by resolution of the

Civil Service Commission to all city departments and the positions of assistant supervisor, supervisor, senior supervisor, assistant director and director were expressly stricken from the ungraded service. That resolution contained the condition that "All persons of the title of Social Investigator, who are affected by this resolution, shall continue in such title with salaries, present duties and status unaffected and unimpaired by this reclassification. Promotion lists presently in existence will continue to be certified for appropriate positions in the new classification."

The plain intent of that resolution is that, though positions in the competitive class of the social service in all departments of the city of New York should be classified and graded as provided in the resolution, yet that the classification and grading should not apply to such positions while held by persons theretofore appointed and who at that time had the title of social investigator, and that the titles, salaries, duties and status of the incumbents should remain unaffected by the grading of positions as provided in the resolution.

Grading of positions previously ungraded confers upon the incumbents some advantages not previously enjoyed and subjects the incumbents to some new disadvantages. An incumbent may not thereafter be demoted to a lower salary grade at the will of the department head; nor may he be promoted to a higher salary grade or assigned to duties not appropriate to the title of the graded position without taking appropriate examination for promotion. The Civil Service Law (Cons. Laws, ch. 7) determines the effect of the grading. The Civil Service Law does not in express terms confer upon a civil service commission power to grade positions in a department and at the same time to provide that the grading shall not affect the salaries, duties and status of present incumbents of such positions. The Commission urges that such power should be read into the law by implication, for otherwise, it is said, reclassification and grading of positions in the public interest will be unduly obstructed. In the courts below the incumbents of

positions appointed under the title of social investigator have successfully urged that not only did the Commission lack power to place any condition or limitation upon its attempted grading of position but also that the resolution as adopted must be given the unintended effect of conferring upon each incumbent the right to be placed within that salaried grade which, under the terms of the resolution, has a salary range which would include the salary he is receiving regardless of whether the incumbent is holding rank and performing duties appropriate to the title of the positions in that grade.

The situation of these incumbents would be anomalous if the provisions of the resolution which exclude them from the regrading were given the intended effect. So long as an incumbent continues to occupy the position he now holds, the position would no longer be ungraded and the salary could no longer be decreased at the will of the department head; yet the incumbent would not occupy a position which falls within any grade provided in the resolution itself. In effect, each position would constitute a separate grade and any change in the rank, functions or salary of the incumbent would constitute a change of grade. We agree with the courts below that by no fair implication can there be read into the statute an intention to confer upon the Civil Service Commission a power to adopt a resolution which would have such an extraordinary effect.

The intent of the Civil Service Law is that there shall be grading of positions in a department where grades can be fixed reasonably with due regard for the public interest. The Civil Service Law does not contemplate that, where such grades may be fixed reasonably, positions may be graded for persons appointed in the future, while the positions in the same service remain ungraded, so long as they continue to be occupied by incumbents previously appointed, though the incumbents have the same powers and duties as those appointed to positions in that service thereafter. It follows that the incumbents whose positions, while occupied by them, have been excluded from the grades fixed for positions in the same service when filled

by later appointment, are entitled to an order directing the Civil Service Commission to classify their positions and to place their positions in an appropriate grade. It does not follow, however, that any appropriate grade in which they *must* be placed has been established by the resolution of the Civil Service Commission, or that the resolution must be given an effect directly contrary to its expressed intent so that the positions occupied by the present incumbents will be included in *the grades now provided by the resolution* from which under the terms of the resolution they are excluded.

It is provided in the Municipal Civil Service Rules that

" 12. ' Rank,' denotes the order or standing of a position with reference to the degree of its responsibility. (Where Rank and Grade are co-extensive the term Grade is used.)

" 13. ' Grade,' denotes the order or standing of a Position with reference to the compensation attaching to it.

" 14. ' Title,' a designation of a Position based upon its duties and functions.

" 15. 'Office title,' designation of a position the duties of which are peculiar to a department."

We are told that in accordance with the definitions contained in the Civil Service Commission's rule the grading of positions is determined solely by the salary paid, and that the salary range of the grades as fixed in the resolution of the Commission determines that all positions to which a salary within that range is attached, necessarily fall within such grade. The courts below, sustaining that contention, have held that, as a result, there must be included in " Grade 2, assistant supervisor, medical social worker, home economist, $1,800 to but not including, $2,400 per annum," the position of every social investigator who receives a salary within the salary range of that grade, even though some of such social investigators have never performed duties appropriate to the title of assistant supervisor, medical social worker, or home economist, while their positions were ungraded, and even though the administrative heads of the departments and the Civil Service

Commission concur in the view that under present conditions no person should act as assistant supervisor or supervisor without taking a competitive or promotional examination for such position.

As authority for that conclusion the respondents lean heavily upon *Matter of Carlin* v. *Finegan* (254 App. Div. 654) and *Matter of Friedman* v. *Kern* (258 App. Div. 1050; leave to appeal denied, 282 N. Y. 809). In the *Carlin* case, the applicant, Carlin, after competitive examination, had been appointed to an ungraded position of chemist. His salary was increased from time to time until he received $2,860 per year. Thereafter, the Civil Service Commission graded the positions in the " chemist service," establishing the following grades, amongst others:

Grade 4 — Chemist — $2,700 to $3,300.

Grade 5 — Senior Chemist — $3,300 to $3,900.

Grade 6 — Principal Chemist — $3,900 upwards.

Carlin was placed in Grade 4, while chemists in the same service and performing similar duties were placed in Grade 5 or Grade 6. Carlin challenged the right of the Commission to grade, according to salary, the positions of men performing similar duties, but the court held otherwise. In the *Friedman* case the question presented was similar. Friedman held a position in an ungraded service. In grading that service incumbents, according to the opinion of the justice at Special Term, were " included in titles and grades appropriate to their duties and salaries." Friedman claimed that his position, when graded, must be placed in a grade with a salary range higher than the salary he was receiving because he had previously had a title used to describe positions in a higher grade, but the court said that the holder of an ungraded position was not " entitled to an increase of salary or to a title applicable only to persons receiving salaries considerably in excess of those which the petitioners were receiving." In those cases the city successfully maintained that under the Civil Service Rules, " The grade of a position is determined by the compensation of the position regardless of the duties performed or the

responsibility of the incumbent." The city's contention here is not inconsistent. The city does not dispute that in grading a position the salary attached to the position determines the grade in which the position is placed. It does dispute the conclusion, resting upon that premise, that because the petitioner-respondents have in the past been receiving salaries within the salary range established under Grade 2 for "Assistant Supervisors," they are entitled to be placed in that grade and in consequence to acquire and hold the rank and to exercise the powers appropriate to a position with that title.

Under the definitions of the Civil Service Rules, each position has a "title" or "designation" which is "based upon its duties and functions," and also has a "rank" which "denotes the order or standing of a position with reference to the degree of its responsibility," and a "grade" which may be co-extensive with its rank but which denotes the "order or standing of a position with reference to the compensation attaching to it." The Civil Service Law recognizes no distinction in the rank, duties or grading of positions in the ungraded service. Within the limits of that ungraded service the department head, as we have said, is free to change the rank, the duties or the salary of those appointed in that service after competitive examination. When the position is graded the rank, functions and grade of the position of the incumbent are fixed and change is subject thereafter to the provisions of the Civil Service Law. Ordinarily the salary attached to a position varies with the rank, powers and duties of the position and since the "grading" of a position is determined by the compensation attaching to the position it is evident that before there can be any grading of the positions in an ungraded service there must be determination of how far there should be differentiation in rank and duties in the positions within the service. After the Commission has decided these matters, the position must be placed in the grade fixed by the salary attached to the position. The courts in the cited cases decided nothing else.

In those cases the incumbents of positions in the ungraded service claimed the right to positions with higher rank or increased powers which were included in a higher grade, urging that before the grading of positions in the ungraded service, the incumbent had been assigned higher rank or exercised the larger powers which were denoted by the title of the positions placed in a higher grade. That was denied them. Here the incumbents of positions in the ungraded service claim the right not merely to have the positions graded with reference to the salaries attached to their positions, but the right to have their positions classified and placed in the salary grade now fixed by the resolution which, in terms, excludes those positions while occupied by them from that grade. They do not conceal the fact that if that is accorded to them it will be contrary to the intention of the Civil Service Commission and will entitle them to occupy the position of assistant supervisor and to perform the duties of that position, though the Commission, if it had seen fit, might have so classified and graded the positions in the ungraded service that the duties and powers of assistant supervisor could not be assigned to persons in the same position and grade as the respondents.

The Commissioners, faced by the problem of how to grade the ungraded service in manner which, in their opinion, would best serve the public interest in the future and at the same time protect the incumbents of ungraded positions, have attempted to solve it by the exercise of powers not granted by the statute. Because of that, we cannot give to the resolution its intended effect, but we may not give to the resolution of the Commission an effect not intended by the Commission. The Commission must reclassify and grade all the positions in the ungraded social service, but the courts may not require the Commission in such reclassification to confer upon the incumbents of the ungraded positions rights and benefits to which they would not otherwise be entitled and which in the opinion of the Commission would work injury to the administration of the city's affairs.

The orders of the Special Term and of the Appellate Division should be modified to the extent that the defendant Commissioners are directed to grade the positions in the ungraded service in accordance with this opinion, and as so modified affirmed, without costs.

LOUGHRAN, FINCH, RIPPEY, SEARS, LEWIS and CONWAY, JJ., concur.

Ordered accordingly.