In the Matter of RAPHAEL A. PETROCELLI et al., Appellants, against JOSEPH D. McGOLDRICK, as Comptroller of the City of New York, et al., Respondents.

Argued February 26, 1942; decided April 23, 1942.

*Leopold V. Rossi* for appellants. Appellants who are in the ungraded service of the competitive class of civil service are entitled to four annual salary increments pursuant to section B40–6.0 of the Administrative Code of the City of New York (L. 1937, ch. 929). (*Matter of Beverly* v. *City of New York*, 260 App. Div. 853; 284 N. Y. 773; *Matter of Dennehy* v. *Kern*, 253 App. Div. 877; 279 N. Y. 645; *Matter of Wexler* v. *Dayton*, 255 App. Div. 567; *Lewin* v. *City of New York*, 256 App. Div. 1063; *Matter of Meyer*, 209 N. Y. 386.) Appellants have protected their rights. (*Matter of Cropsey* v. *Hylan*, 199 App. Div. 218; 232 N. Y. 601.)

*David A. Savage* and *John F. O'Shea* for Committee on Behalf of Ungraded Civil Service Employees of City of New York, *amicus curiæ*. The language of the statute is clear in itself. The interpretation given to it by the lower courts is not justifiable. (*Matter of Tormey* v. *LaGuardia*, 278 N. Y. 450.) Petitioners have a clear legal right to the benefits of subdivision 2 of section B40–6.0 of the Administrative Code. (*Matter of Beverly* v. *City of New York*, 284 N. Y. 773; *Matter of Amann* v. *Finegan*, 253 App. Div. 364; *Matter of Wingate* v. *McGoldrick*, 279 N. Y. 246.)

*William C. Chanler, Corporation Counsel* (*Charles F. Murphy* and *Paxton Blair* of counsel), for respondents. The statute was enacted solely for the benefit of employees in the lower salary brackets. In fixing a ceiling beyond which employees in the ungraded service could not receive increments, the court below properly construed the intent behind the enactment of that act by limiting its benefits to employees within that compass. (*Matter of Beverly* v. *City of New York*, 284 N. Y. 773; *Matter of Dennehy* v. *Kern*, 279 N. Y. 645; *Archer* v. *Equitable Life Assur. Society*, 218 N. Y. 18; *Matter of Beggs* v. *Kern*, 284 N. Y. 504.)

Lewis, J. The petitioners-appellants are investigators and institutional inspectors in the Department of Welfare and Hospitalization in the city of New York. Prior to July 1, 1937,

they were appointed to their present positions which are in the *ungraded* service of the competitive class of civil service. At the time of their appointment their salaries were fixed at $1,800 per annum or less. Thereafter some received salary increases with the result that on July 1, 1937 — a date which is important to our decision — a few of the petitioners were receiving more than $2,280; others were receiving less than $2,280 but more than $1,800.

On July 1, 1937, there became effective Local Law No. 45 of 1936 (Local Laws 1936, p. 172), which is now section B40–6.0 of the Administrative Code of the City of New York (L. 1937, ch. 929 [ch. 40, tit. B, § B40–6.0, p. 1169]):

" § B40–6.0. *Employees; certain civil service; annual increment.* a. In each annual expense budget, there shall be included and provided *annual salary increments of at least one hundred twenty dollars for each employee in the competitive class,* as defined by section fourteen of the civil service law as more particularly hereinafter described and provided:

1. For each employee who has served at least one year in a grade or rank of a position in the *graded* service of the competitive class, the minimum annual salary of which is one thousand eight hundred dollars per annum or less, there shall be provided and paid an annual salary increment of at least one hundred twenty dollars *until the maximum salary of the grade or rank shall have been reached.*

2. For each employee who has served at least one year in a position of the *ungraded* service of the competitive class, the entrance appointment salary of which is one thousand eight hundred dollars per annum or less, there shall be provided and paid an annual salary increment of at least one hundred twenty dollars *until four such annual increments shall have been reached.* * * *." (Emphasis supplied.)

Reduced to its simplest terms the section of the Administrative Code quoted above — to which reference will be made as " § B40–6.0 "— provides (1) that the city budget shall include annual salary increments of not less than $120 for each employee in the competitive class; (2) that employees in the *graded* service, who have served at least one year and whose appointment salary was $1,800 or less, shall be paid such annual salary increments " until the maximum salary of the grade or rank shall have been

reached;" (3) that employees in the *ungraded* service who have served at least one year — which includes the petitioners — whose appointment salary was $1,800 or less, shall be paid such annual salary increments "until four such annual increments shall have been reached." For example: an employee in the *graded* service, whose appointment salary was $1,600 and whose grade entitled him to a maximum salary of $2,400, shall receive annual salary increases of $120 until the maximum of $2,400 is reached. It is thus seen that if — although such employee entered the *graded* service at $1,600 — he had been increased to $2,000 prior to July 1, 1937 (the effective date of § B40–6.0), he would be entitled to three annual increments of $120 each and a fourth of $40, thus bringing his annual salary to his grade maximum of $2,400. There is no dispute that as to *graded* employees this is the statutory scheme.

The particular problem presented by this appeal concerns employees in the *ungraded* service. The problem is exemplified by the case of an employee who entered the *ungraded* service at an entrance appointment salary of $1,600 and thereafter received such salary increments that by the time section B40–6.0 became effective on July 1, 1937, his annual salary was $2,000. Unlike the *graded* service, there is in the *ungraded* service no fixed maximum salary. Accordingly, if we apply subsection 2 of section B40–6.0, already quoted, to the case of the *ungraded* employee, it follows, from language there employed, that he would be entitled to four annual increments of $120. In other words, he would continue to receive increases until his salary amounts to $2,480.

The respondent city authorities, however, in their administration of this law, have refused to pay employees in the *ungraded* service any increase beyond $2,280. That figure is arrived at by proceeding on the assumed premise that section B40–6.0, in effect, fixes a maximum for salaries paid in the *ungraded* service. (Cf. *Matter of Callahan* v. *McGoldrick*, 171 Misc. Rep. 573; affd., 259 App. Div. 883.) Such a maximum, it is said, has been fixed at a figure arrived at by taking as a basis the maximum appointment salary of $1,800 and adding thereto four annual increments of $120 each, thus producing the maximum figure of $2,280.

We find in the governing statute no basis for the interpretation adopted by the city authorities. There is no indication from

the language employed in subsection 2 of section B40–6.0 of a legislative intent to establish a maximum annual salary for *ungraded* employees. And it may be added that, even though it be claimed that such an interpretation is expressed in subsection 2, there is no evidence from which to determine what that maximum should be. The language, as we read it, authorizes no definite figure. The maximum annual salary attainable under subsection 2 of section B40–6.0 cannot be reached in *ungraded* service "until four such annual increments [of $120 each] have been reached."

The difference between "grade" and "rank" and between graded and ungraded service was clearly pointed out by Chief Judge LEHMAN in *Matter of Beggs* v. *Kern* (284 N. Y. 504, 509, 513). There seems to be no express provision in the Civil Service Law (Cons. Laws, ch. 7) for the grading of civil service employees. However, the Municipal Civil Service Commission has adopted rules to effect such grading, which rules have the force of law. (Civ. Serv. Law, § 6, subd. 1.) Where there is a large group of employees doing similar work, they are graded on the basis of salary, which grading serves as a means of aiding the administration of the Civil Service Law with special reference to the promotion of employees. If the salary for a certain type of work shall be between $1,800 and $2,400, it is that range of salary which establishes the grade for employees who do that type of work. *Ungraded* employees are such as do work so varied in character that there are no large groups which may be so typed as to place them within a single salary range.

In the case at bar we assume that the petitioners are properly in the ungraded service for which, as indicated above, there is no maximum salary. We conclude, however, that section B40–6.0 gives to employees in the *ungraded* service the right to be paid, in addition to the salary received by them on July 1, 1937, four annual increments of $120 each. But we are told that, under such an interpretation an employee might have entered the *ungraded* service at a salary of $1,700 and by salary increments might have been raised prior to July 1, 1937, to an annual salary of as much as $5,000 and thereafter be entitled to four annual increments of $120 each. In contrast there is cited as an example the case of an employee in the *graded* service who could receive such a salary increase only by taking promotional examinations.

In the absence of language in subsection 2 of section B40–6.0, expressly fixing a maximum salary for ungraded service the respondent city authorities assert that the law was passed to enable employees in the lower salary brackets to secure annual increases. We are told that it could not have been the intention of the law makers to enact a measure which would grant annual salary increases which would be effective in the higher salary brackets. The example referred to above — of the employee who entered service at a salary of $1,700 and was increased to $5,000 before July 1, 1937 — is suggested by the respondents to demonstrate the alleged unreasonableness of the petitioners' interpretation. It must be admitted that, under the petitioners' interpretation — which we believe to be correct — such an employee would be entitled, under subsection 2 of section B40–6.0 to increases " until four such annual increments shall have been reached "— viz., until he receives $5,480. Such a result, say the respondents, could not have been the intention of the law makers. That argument, as we view it, loses force in view of the absence in the governing statute of an expressed intention, or one fairly to be implied from its language, to establish a maximum salary for *ungraded* employees. We find no provision in section B40–6.0 declaring the rights of employees in the graded and ungraded service to annual salary increments, which indicates an intention to consider only the positions of those receiving less than $2,280.

An example of the injustice which might result from the interpretation adopted by the city is found in the case of an employee who enters the *ungraded* service at an annual salary of $1,800. At the same time an employee enters the *graded* service at the same salary. If both had received the same increases and were receiving $2,000 on July 1, 1937, the employee in the *ungraded* service would be entitled thereafter to four annual increments, not of $120 each, but in such amounts as in total would give him a salary limited to $2,280. Meantime, however, the employee in the *graded* service, whose grade carried a maximum salary of $2,400, would be entitled under subsection 1 of section B40–6.0 to increments up to $2,400. The city has arbitrarily limited the salary for *ungraded* employment at $2,280 by adding four increases of $120 each to $1,800, because $1,800 is the maximum entrance salary for positions to

which section B40–6.0 applies. With as good reason the city could have chosen, instead of $1,800, the salary which the employee was receiving on July 1, 1937, the date when the law became effective. If, as in subsection 1, which refers to *graded* employment, subsection 2 expressed a clear intention to recognize some maximum, no fault could be found with the city's position. In the absence of an indication of such legislative intention, we cannot accept as determinative of this appeal the interpretation urged by the respondents.

The petitioners-appellants have preserved their rights by accepting their salaries under protest.

The orders should be reversed and the petition granted in accordance with this opinion, with costs to the appellants in all courts.

LEHMAN, Ch. J., LOUGHRAN, FINCH, RIPPEY, CONWAY and DESMOND, JJ., concur.

Orders reversed, etc.