Vah Voorhis, J.
This proceeding under article 78 of the Civil Practice Act has been instituted by petitioner as a citizen to compel the removal of Dr. John E. Conboy as medical examiner in charge of the medical staff of the Board of Education of the City of New York. Petitioner moved for the relief demanded in the petition on the pleadings and affidavits. Acting under section 1295 of the Civil Practice Act empowering the court to render such final order as the case requires upon the return day of the application, if no triable issue of fact is duly raised by the pleadings and accompanying papers, Special Term dismissed the petition on the ground that this proceeding was not instituted within the statutory four months’ period provided by section 1286 of the Civil Practice Act.
Inasmuch as Dr. Conboy continues to occupy his present position, a continuing violation of the Civil Service Law is involved if he occupies the position illegally (Matter of Beggs v. Kern, 172 Misc. 556, 566). The ground on which the petition was dismissed at Special Term is, therefore, untenable.
Since the facts are not in dispute, however, Special Term correctly undertook to make a final disposition of the proceeding on the return date, and we are in accord with the result reached although for different reasons.
The medical staff of the Board of Education, of which Dr. Conboy has been made the directing head, has jurisdiction, under the supervision of the Superintendent of Schools, over the medical examination of all persons employed by the Board of Education or seeking restoration to such service, of all persons being examined by the Board of Examiners for licenses or certificates, and all persons being considered for retirement by the Board of Education Retirement Board. The members of the medical staff also perform such other duties as the Superintendent of Schools may require.
The members of this'Staff consist of school medical inspectors, including aurists and psychiatrists, laboratory technicians and registered graduate nurses, in addition to Dr. Con-boy. All of the physicians on the medical staff with the excep *716 tion of Dr. Conboy are in the unclassified civil service and have been appointed frotii lists promulgated by the Board of Examiners of the Board of Education instead of by the Municipal Civil Service Commission. As to school medical inspectors, they are licensed in accordance with section 870 of the Education Law (now § 2516).
The position of medical examiner, however, as contrasted with school medical inspector, whether in education or in other fields of municipal activity, is in the competitive class of the classified civil service, and is filled from eligible lists promulgated by the Municipal Civil Service Commission. Dr. Con-boy was on such an eligible list as medical examiner in 1924, after having taken successfully a competitive examination. The eligibles resulting from that examination were deemed appropriate for appointment to positions in the Department of Education, as well as in other departments of the city requiring the services of such an officer. At that time it appears that the other members of the medical staff attached to the Board of Education were in the competitive class.
The medical service in the city of New York has been designated as part 12 of the classified civil service, divided into four grades. Grade 1 covers positions paying from $1,200 to $1,800 per annum; grade 2 from $1,801 to and including $2,400 per annum; grade 3 from $2,401 to but not including $3,000 per annum, and grade 4 covers positions paying $3,000 and over per annum. Grade 4 consequently is the highest grade of the medical service in the city, and the maximum salary paid to a person holding a grade 4 position is within the discretion of his department.
On January 1, 1928, after having passed successfully a promotional examination, Dr. Conboy was promoted to the position of Examining Physician, Grade 4, Department of Education, at $4,000 per annum. It may be repeated that he is "thus the only member of the Board of Education’s medical staff now in the competitive class of the civil service, and that he has attained his present rating as the result of passing two civil service examinations.
His present assignment dates from July 10, 1946, when Ms salary as Examining Physician, Grade 4, was set by the Board of Education at $7,500 ($7,850) per annum, and he was assigned to supervisory duties in charge of the said medical staff. He was the senior physician on the staff.
The assignment of supervisory duties to a position .such as thin does not necessarily constitute a promotion within the *717 meaning of the Civil Service Law. It has been so held in respect of action by the Police Commissioner in selecting from among the members of the uniformed force a Superintendent of Buildings in the Police Department of the City of New York (Barlow v. Craig, 209 App. Div. 89). The ability to superintend and work effectively over .other men or women is one of the most intangible of human characteristics, and is difficult to measure by formal examination. There is common sense in leaving the determination of such qualities, within proper limits, to the good judgment of those who have been able to observe the conduct of the individual in question in the performance of his work over a period of time in association with the persons whom he is being detailed to supervise.
Neither did the increase in salary from $4,000 to $7,500 ($7,850) per annum constitute a promotion in this instance, in the absence of any upper limit to the salaries which may be paid to Examining Physicians, Grade 4. The same rule obtains, where there is no top limit and the salary is raised, as in the case of persons in the ungraded service. In Matter of Petrocelli v. McGoldrick (288 N. Y. 25, 29), the court stated: “ The difference between ‘ grade ’ and ‘ rank ’ and between graded and ungraded service was clearly pointed out by Chief Judge Lehman in Matter of Beggs v. Kern (284 N. Y. 504, 509, 513). * * * Ungraded employees are such as do work so varied in character that there are no large groups which may be so typed as to place them within a single salary range.”
That description applies also to grades such as Examining Physician, Grade 4, where the absence of a maximum salary limit, and the nature of the work, indicate that the duties appertaining to that grade were regarded as sufficiently varied in character so as to present an analogy with the ungraded service described in the opinions of the Court of Appeals in the two cases just cited.
For the reasons stated, there could be little ground for contending that Dr. Conboy occupies his present position illegally, except for the circumstance that in 1942 the Board of Education created a position described as chief medical examiner with a salary of $10,000 per annum plus salary increments, the duties of which were the same as those now performed by Dr. Conboy. He was appointed provisionally to that position, but prior to the conducting of a competitive examination by the Municipal Civil Service Commission, the position was abolished by the Board of Education on July 10, 1946, *718 on which date Dr. Conboy was assigned to his present position.
Undoubtedly if the Board of Education could not have assigned Dr. Conboy in the first place to the performance of these supervisory duties at the salary which he now is paid without his being required to take a further promotional examination, the petitioner would be in a much stronger situation. On the other hand, if he could legally have been assigned to his present work and pay in 1942 as Examining Physician, Grade 4, without taking an additional promotional examination, as was the case, then the legality of his present tenure of office cannot be affected by the circumstance that the Board of Education in 1942 established a position known as chief medical examiner which was abolished in 1946. Section 868 of the Education Law (now § 2504) empowers boards of education to abolish as well as to create such positions. Nor can respondent Board of Education be held guilty of bad «faith in abolishing this position so as to circumvent civil service requirements, if there was no necessity to create the position in the beginning.
The order appealed from denying the petitioner’s motion should be affirmed, with $20 costs and disbursements.