People of State of Illinois ex rel. McKeown et al., Appellees, v. Stephen E. Hurley et al., Appellants.

Gen. No. 45,287.

Opinion filed June 1, 1951. Rehearing denied June 13, 1951. Released for publication June 22, 1951.

JOHN J. MORTIMER, Acting Corporation Counsel, of Chicago, and TAYLOR, MILLER, BUSCH & MAGNER, all of

Chicago, for appellants; L. Louis Karton, Head of Appeals and Review Division, Louis H. Geiman, Assistant Corporation Counsel, Sydney R. Drebin, Assistant Corporation Counsel, Francis X. Busch, James J. Magner, and E. Marvin Buehler, all of Chicago, of counsel.

Michael F. Ryan, of Chicago, for appellees; Richard F. McPartlin, Jr., of Chicago, of counsel.

Mr. Presiding Justice Niemeyer delivered the opinion of the court.

Defendants, the members of the Civil Service Commission of the City of Chicago, and interveners, plumbers in the classified civil service of the city, appeal from a judgment awarding the writ of mandamus directing the commission to cancel its call for promotional and original examinations for plumbing inspector, cancel and expunge from its records its reclassification order changing the classification of the position of plumber and to issue a call for an original examination for plumbing inspector. The relators, hereafter called plaintiffs, are licensed plumbers, noncivil service employees of the city serving for many years as plumbing inspectors under temporary appointments.

Pursuant to section 3 of "An Act to regulate the civil service of cities" (Ill. Rev. Stat. 1949, chap. 24½, par. 41) [Jones Ill. Stats. Ann. 23.042], hereafter called the Civil Service Act, the commission adopted rules classifying the offices and places of employment in the service of the city. By Rule I the classified service was divided into five main branches, with further division into classes within each branch. We are concerned only with the part of the rule relating to Branches II and III, as follows:

"Branch II.—Operation and Construction. Embracing positions the duties of which involve opera-

tion, maintenance and upkeep of municipal activities and the construction and betterment of municipal works and works over which the city is required to exercise supervision or regulation.''

''Class K. Building Trades, embracing positions the duties of which require practical skill in the recognized building and construction trades and supervision thereof.''

''Branch III—Health and Welfare. Embracing positions the duties of which relate to public health work and work in connection with the various activities for the public welfare.''

''Class O. Inspectional Service, embracing positions the duties of which relate to the inspection of premises and conditions.''

The service was further divided into grades, ''uniform to all branches and classes, . . . designated and defined as follows: . . .

Grade 2. Junior Grade. Positions of routine duties.

Grade 3. Senior Grade. Positions of intermediate responsibility.''

Section 9 of the Civil Service Act (Ill. Rev. Stat. 1949, chap. 24½, par. 47) [Jones Ill. Stats. Ann. 23.048] is in part as follows:

''The commission shall, by its rules, provide for promotions in such classified service, on the basis of ascertained merit and seniority in service and examination and shall provide, in all cases where it is practicable, that vacancies shall be filled by promotion. All examinations for promotion shall be competitive among such members of the next lower rank as desire to submit themselves to such examination . . . .''

No examination for plumbing inspector has been held since 1911. The position was and is classified in Branch III, Class O, Grade 3. Prior to the reclassification of the position of plumber in controversy here, there were no positions in the next lower rank or

grade to the position of plumbing inspector. On September 12, 1949 the commission reclassified the position of plumber by changing it from Branch II, Class K, Grade 3, to Branch III, Class O, Grade 2, and called a promotional examination for plumbing inspector, defining plumbers Grade 2 as eligible for promotion. It also called an original examination for plumbing inspector. This action was ordered canceled by the trial court on the ground that the reclassification constituted an abuse of discretion, the work of the plumber not being of the same line, type or character as the work of the plumbing inspector. Plaintiffs contend that the proper classification of a position in the classified service is a question of law, to be determined by the courts. Defendants and interveners insist that it is a matter of administrative judgment or discretion with which the courts cannot interfere except in the case of an arbitrary, artificial or "paper" classification.

The power of the court in mandamus is clearly stated in *People ex rel. Elmore v. Allman,* 382 Ill. 156, as follows:

"Admittedly, mandamus does not lie to control or review the discretion of an inferior tribunal (*People ex rel. Brachear v. Board of Supervisors,* 308 Ill. 543; *People. ex rel. Thatcher v. Village of Hyde Park,* 117 id. 462,) and in mandamus actions against administrative officers, such as the commission in this case, the courts will not inquire into the merits of the matter that it may substitute its own judgment or discretion for that of the administrative body. (*People ex rel. Miller v. City of Chicago,* 234 Ill. 416.)"

In *People ex rel. Schau v. McWilliams,* 185 N. Y. 92, where the question of a proper classification of a position of employment under the civil service law of the state was involved, as in this case, the court said:

416

"But where the position is one as to the proper mode of filling which there is a fair and reasonable ground for difference of opinion among intelligent and conscientious officials, the action of the commission should stand, even though the courts may differ from the commission as to the wisdom of the classification."

██ ██ The obligation of the commission to fill all vacancies in the classified service by promotional examinations, if possible, is definitely fixed by statute (section 9, Civil Service Act) and by judicial decision (*People ex rel. Williams v. Errant*, 229 Ill. 56). In that case the court said:

"The first and most important object to be accomplished by a system of civil service is to increase the efficiency of the service. . . . Among the means devised to secure the highest degree of efficiency are the assurance that . . . faithful, honest and efficient service in one position will open up possibilities for future promotion to a better one."

His former classification did not give to the plumber that assurance. Obedient to the letter and spirit of the civil service law, the commission placed him in the next lower rank or grade to the plumbing inspector, stating in the order "the duties and responsibilities and the line of promotion warranting this reclassification." The obligation to classify the offices and places of employment in the civil service necessarily carries with it not only the right but the duty to reclassify such offices and places of employment in furtherance of the purposes and successful functioning of the service. To hold otherwise would prevent correction of errors and betterment of the service. If there is a reasonable basis for the reclassification the courts cannot interfere.

██ The nature of the work and duties of the plumber are such that he can be reasonably classified in

417

Branch II or Branch III as the classifier may choose. The plumber is in a building trade. His work and duties are part of the construction, maintenance and upkeep of buildings. The plumber also has a direct connection with the public health and welfare, especially in cities having a water and sewage system. The trial court found that the "services of a plumber make a great contribution to the health and welfare of the City of Chicago." Since 1897 the legislature of the State has recognized the vital relation between the public health and the manner in which plumbing work is done in cities. In that year the first law was enacted licensing plumbers and providing for the supervision and inspection of plumbing. (Hurd's Ill. Rev. Stat., chap. 24, par. 498 et seq.) In 1917 the law was revised. (Hurd's Ill. Rev. Stat., chap. 109a.) In each Act the chairman of the board of health of the respective cities was made a member of the board of examiners of the city. The last Act—the Illinois Plumbing License Law, passed in 1935—is entitled "An Act in relation to the regulation of plumbing . . . and for the protection of public health." (Smith-Hurd Rev. Stat. 1935, chap. 111½, par. 95, et seq.) [Jones Ill. Stats. Ann. 103.10 et seq.] By section X (A) it is "declared to be the policy of this State that each city, town or village with a system of water supply or sewage or both should, . . . *with the advice of the State Department of Health,* provide by Ordinance, . . . for the materials, construction, alteration and inspection of all plumbing placed in or in connection with any building in any such city, town or village and to provide for and appoint a competent Plumbing Inspector or more as required." (Italics ours.) These statutes and similar statutes in other states are sustained as an exercise of the police power under which the legislature may pass laws for the protection of the health, comfort and safety and welfare of society. *Douglas v. People ex rel. Ruddy,*

418

225 Ill. 536. In *Singer v. State of Maryland,* 8 L. R. A. 551 (72 Md. 464), cited in the *Douglas* case, the court said: ''We all know that in a large city like Baltimore, with its extensive system of drainage and sewage, the public health largely depends upon the proper and efficient manner in which the plumbing work is executed.'' In McQuillin, Municipal Corporations (2d ed.) Vol. 3, sec. 1117, page 743, the author says:

''As the business of plumbing is so intimately connected with the public health, especially in the crowded urban centers which have scarlet fever, typhoid fever, diphtheria and kindred diseases which may become epidemic, the sound view is that such occupation is obviously a proper subject of reasonable police regulation.''

█ Section 3 of Rule 1 designates and defines certain classes of services within each branch. These classes include offices and places of employment of the same relative kind and character of work but are not uniform as to all branches. In Branch II is Class K, ''Building Trades, embracing positions the duties of which require practical skill in the recognized building and construction trades and supervision thereof.'' There is no similar class in Branch III. When classified in Branch II the plumber was placed in Class K. On his transfer to Branch III he was placed in Class O, ''Inspectional Service, embracing positions the duties of which relate to the inspection of premises and conditions.'' Plaintiffs contend that this is an arbitrary classification because the plumber has no duties of inspection. There is no other class of service in Branch III to which he might more reasonably be assigned. The plumbing inspector has always been classified in Branch III, Class O, Grade 3. Under section X (A) of the Illinois Plumbing License Law the inspector must be a master plumber or a journeyman plumber

419

with a license of a journeyman plumber in effect for at least five years. Greater knowledge and more experience are required of the inspector than of the plumber. The position of the former is in direct line of advancement for the latter. The reclassification of the plumber by placing him in the next lower grade in the same branch and class as the inspector and rendering him eligible for promotion to inspector was a proper exercise of the administrative judgment and discretion of the commission.

The judgment is reversed.

*Reversed.*

FEINBERG and TUOHY, JJ., concur.