Kent HELGEVOLD, Ken Groff, George Land, Dennis Wertz, Carl Grall, Joe McMahon, Donald Hefley, Albert Antolik, Edmond Svaleson, and Clayton D. Chalstrom, Plaintiffs-Appellants,

v.

CIVIL SERVICE COMMISSION of the City of Fort Dodge, Iowa, and the City of Fort Dodge, Iowa, Defendants-Appellees.

No. 83–1490.

Court of Appeals of Iowa.

Feb. 26, 1985.

Harry H. Smith and MacDonald Smith, Sioux City, for plaintiffs-appellants.

Maurice C. Breen, City Atty., and Terry W. Guinan, Sioux City, for defendants-appellees.

Heard by OXBERGER, C.J., and DONIELSON, and SACKETT, JJ.

OXBERGER, Chief Judge.

This appeal presents issues of first impression affecting public employees and the unions that represent them. The specific issue we address on appeal is whether reducing certain fringe benefits constitutes a demotion which can occur only as specified in our Code. The changes were made within the same class of employees who perform similar duties and receive the same pay. After weighing the varying theories and viewpoints in this area, we hold that, in this instance, where fringe benefits were lowered for some employees and

raised for others within the same class, for the purpose of obtaining uniformity of benefits within the class, there has been no demotion.

The appellants represent the class of Command Staff Officers employed by the City of Fort Dodge as supervisory employees in the police and fire department. They appeal the decision of the trial court affirming a civil service commission determination that changes in their employment benefits did not constitute an unlawful demotion. As a result of our holdings, we affirm the trial court ruling.

■ In using the term "class" we refer to authorities indicating those within a class perform similar duties and are within the same grade of pay. 15A Am.Jur.2d *Civil Service*, §§ 23, 24 (1976). Appellants do not specifically address the issue of whether the officers constitute a class, and appellees refer to the group as a class. Neither side disputes that the Command Staff Officers perform similar supervisory duties over the police or fire departments, and receive the same pay. Therefore, we find the appellants are within the same class.

As supervisory employees of the City, the Command Staff Officers, who refer to themselves as CSOs, were not part of collective bargaining. Instead, the rank and file they supervised would collectively bargain for wage increases and benefits. The CSOs would receive their wages based on a higher pay grade scale than that used for the rank and file. The CSOs would meet with City personnel, who each year agreed to give the supervisors the same benefits as had been bargained for with the blue-collar workers, plus something extra. The CSOs would receive one or two more holidays than the blue-collar workers, for example, and a maximum of six or seven weeks vacation instead of five given to those in the bargaining unit. Fire department supervisors would negotiate separately from the police supervisors, and the fringe benefits awarded each group accordingly varied between them, although they always received more than the personnel

they supervised. Each year a different agreement would be worked out. None of the terms were ever reduced to a writing.

In January 1982, the city personnel director was asked to develop a benefit plan which would be uniform for the management employees who were not a part of the bargaining unit. The report developed was approved after a meeting between the city attorney, city clerk, personnel director, and the mayor, and after changes were made by the Ways and Means Subcommittee of the City Council.

The plan developed provided for uniformity among the supervisors, but in so doing, some department managers saw certain benefits reduced, while other departments received a gain. The blue-collar workers of the police department, for example, bargained for eleven paid holidays for 1982 to 1983, while the fire department rank and file received nine paid holidays. The CSOs of both fire and police departments were given ten and one-half paid holidays under the new plan. They received some benefits the blue-collar workers did not receive, and lost other benefits retained by the blue-collar workers when they bargained.

It is the CSOs' contention that the elimination of some of these fringe benefits resulted in decreased compensation. They claim decreased compensation results in a demotion, and Iowa Code § 400.18 (1983) does not allow such demotions unless there are proper grounds, and only after a vote of the Civil Service Commission. No such grounds or procedure was involved in this situation.

The Civil Service Commission dismissed the appeal of the CSOs on July 16, 1982, but did not make a finding as to whether the actions constituted a demotion. The trial court also dismissed the appeal on October 6, 1983, finding no demotion had occurred.

■ The scope of our review is de novo. Iowa R.App.P. 14(f)(7). We are to try the case anew and give no weight to the findings of the Commission. *Sieg v. Civil Ser-*

*vice Comm'n of West Des Moines*, 342 N.W.2d 824, 828 (Iowa 1983).

Iowa statutory law regarding civil service is limited in number, and apparently only a small amount of litigation has reached our appellate courts on these issues. We find we must turn to the opinions of experts in municipal law and cases from other jurisdictions, in addition to the statements of the Iowa courts, to answer the question presented.

### I. Controlling Policies of Civil Service Law

In order to explore this area of law, we look to the basic policies of civil service law. In constructing a will it has been stated the polestar is the testator's intent. In civil service law it can be said the polestar is the public's good, for this is the reason our civil service laws have developed:

> While security of tenure in office is an important object of the civil service system, and it has been said that civil service legislation was enacted for the security of the faithful employee by giving him permanence of employment, at least for the period prescribed by law, and to free such employee from fear of political and personal prejudicial reprisal, civil service laws were intended as a protection for the public as well as for the individual employee. Stated otherwise, civil service was not established for the sole benefit of public employees. In fact, it has been said that the primary purpose of civil service is to enable state, county, and municipal governments to render more efficient services to the public by enabling them to obtain efficient public servants.

15A Am.Jur.2d *Civil Service* § 1 (1976); *See also* 3 McQuillan § 12.76 (1982). As explained by the Iowa Supreme Court, the reason civil service employees are accorded certain rights regarding demotions, among other actions, is to provide the public with competent public employees who will not be removed or demoted for improper reasons.

Neither the Civil Service Statute nor the Soldiers Preference Law was intended as a cloak or shield to cover misconduct, incompetency or failure to perform official duties, but such laws were certainly intended to provide some protection and safeguard against arbitrary action of superior officers in removing or discharging such employees for reasons other than those named in the statutes. As has many times been said, the public service is at all times to be the criterion. *Anderson v. Civil Service Commissioners of the City of Des Moines*, 227 Iowa 1164, 1168, 290 N.W. 493, 494 (1940).

As has been succinctly stated, "Dual functions are delegated to and imposed upon the Commission; first, to protect civil service employees in their jobs or positions as long as they are not guilty of misconduct or failure to perform their duties; and second, and equally, to protect the public from the consequences of the misconduct and neglect of duty of its employees.... The Commission is a protection and a shield to the civil service employee against an arbitrary or capricious removal." *Misbach v. Civil Service Commission*, 230 Iowa 323, 327, 297 N.W. 284, 286 (1941).

It is for this reason that the courts have warned:

> Constitutional and statutory civil service provisions should be liberally construed in their entirety to further their purpose to put positions in the classified service beyond political control or the exercise of partisanship and personal favoritism. Thus, they should be so construed as to meet the public demand in which they originated for the removal of employment in the public service from partisan politics and the placing of it upon the basis of merit and fitness to be ascertained by competitive examinations open to all.

*Airport Commission for the City of Cedar Rapids v. Schade*, 257 N.W.2d 500, 503 (Iowa 1977) (citations omitted).

It is also clear from statements made here and in other jurisdictions that the civil service laws were not created in the vein of

injecting court involvement into the administration of municipalities. Our court noted this in construing the Soldiers' Preference Act, a statute from which the applicable section regarding demotion of civil service employees was derived. *See* Iowa Code Annotated § 400.18 (West 1983). Although the specific section of the older statute did not carry over to the current law, we find significant the court's attitude in stating, "There is nothing in the Soldiers' Preference Law, or any other law, which compels a municipality to do its business less efficiently and economically than it is able to do." *Babcock v. City of Des Moines*, 180 Iowa 1120, 1129, 162 N.W. 763, 763–64 (1917). For this reason the court found the city could decrease the salary of a municipal employee, if it was not done in bad faith and for the purpose of removing the employee. *Id.*

Among the administrative duties of the city which have been recognized is the authority to establish different salary positions or grades. 1965–66 Op. Att'y Gen. 50; the ability to reclassify in furtherance of successful function of the service, *People ex rel. McKeown v. Hurley*, 343 Ill. App. 413, 417, 99 N.E.2d 355, 358 (1951); and to reorganize within departments as long as the city is not attempting to avoid the purposes of the civil service laws, 3 McQuillan § 12.134 (1982).

There are limits upon actions the city may take for administrative reasons. The municipality may not avoid the dictates of the civil service laws by merely labeling an action administrative. *Id.* Reclassification or reorganization will not be permitted when its purpose is to avoid civil service laws. *Id.* The city also may not discriminate against members of a class, however, it has been stated the purpose of civil service classification is equality of treatment within a class, not between classes. *Airport Comm'n for the City of Cedar Rapids*, at 503; *Brightman v. Civil Service Comm'n of the City of Des Moines*, 204 N.W.2d 588, 591 (Iowa 1973).

Therefore, this court must balance the interests involved; those of the city in controlling the functions and administration of the municipal corporation, and of the employee in serving without threat of demotion or removal for improper or partisan reasons. The fulcrum in balancing these interests is the public good.

## II. Definition of Demotion

Few Iowa cases discuss the various aspects of a demotion under Iowa Code § 400.18 (1983). However, in one case, the Iowa Supreme Court provided a definition of demotion as "to reduce to a lower rank or grade." *Brightman* at 590.

The terms "rank" and "grade" were not further defined, although other authorities have expanded on the definition. "Rank" is termed as an employee's relative standing in an agency's organizational structure, as determined by his or her official position. *Fucik v. United States*, 228 Ct.Cl. 379, 655 F.2d 1089, 1092 (1981). "Grade" has been used more often when referring to the level of pay and title. *Id.* at 1093–94. One definition indicates a rank is an order of standing of position with reference to the degree of responsibility, where grade is the order of standing of position with reference to the compensation attached to it. *Beggs v. Kern*, 284 N.Y. 504, 511, 32 N.E.2d 529, 532 (1940).

These authorities show that the demotion in rank or grade referred to in *Brightman* occurs when a person's position changes in the hierarchy through rearrangement of his or her duties or authority, or when a person's grade changes because his compensation is decreased.

Using the basic tenets of civil service law, courts have stated that a decrease in compensation alone is not sufficient to constitute a demotion. *Sterling v. Commonwealth, Department of Environmental Resources*, 504 Pa. 7, 11, 470 A.2d 101, 103 (1983); *Reed v. City Council of City of Roseville*, 60 Cal.App.2d 628, 635, 141 P.2d 459, 463 (1943). In *Sterling* the court indicated the ability to place an employee in a lower position within a class does not conflict with the purpose of the civil service

act of "greater efficiency and economy in the administration of the government.... The Legislature did not intend ... to unduly restrict an agency's managerial or supervisory actions ..." *Sterling v. Commonwealth, Department of Environmental Resources*, 504 Pa. at 13, 470 A.2d at 104 (1983). Our court has indicated that merely rearranging the classification of employees does not constitute a demotion, even if as a result, those who were previously placed below one class are moved to a higher class. *Brightman* at 591; 1977–78 Op.Atty.Gen. Iowa 119. Adjusting the pay of civil service employees is within the power of the municipal corporation as long as those within the class are treated alike. *Id.*

One court has indicated that the purpose of its Tenure Act for teachers was to maintain an adequate and competent teaching staff, free from interference, but not to confer special privileges or disrupt the financial scheme of the school administration. *Smith v. School District of Philadelphia*, 334 Pa. 197, 205, 5 A.2d 535, 539 (1939). That act, like our civil service act, provides that demotions are not permitted unless the employee consents or has a right to a hearing. *Id.* However, the court found the teachers' salaries could be reduced, stating:

> The word 'demotion' as used therein means a reduction of particular teachers in salary or in type of position as compared with other teachers having the same status. But where there is a general adjustment of the salaries of all teachers with no consequent individual discrimination, the relative grade or rank of any particular teacher remains the same, and there has been no 'demotion' of any particular teacher within the meaning of the word as there used.

*Id.* Therefore a reduction in pay below that person's grade is a demotion.

■ The difficulty faced in this case is that although the CSOs' salaries are graded, the fringe benefit awards are not graded. It has been indicated that grading is a substitute for a contract with the civil ser-

vice employees and has the same effect as a contract. 15A Am.Jur.2d *Civil Service* § 48 (1976). Therefore, where the employee's compensation is not graded, the employer cannot be confined in changing salaries as long as the policies of civil service law are not violated. This has been recognized by other courts which have indicated:

> The Civil Service Law recognizes no distinction in the rank, duties, or grading of positions in the ungraded service. Within the limits of that ungraded service the department head, as we have said, is free to change the rank, the duties, or the salary of those appointed in that service after competitive examination. When the position is graded the rank, functions and grade of the position of the incumbent are fixed and change is subject thereafter to the provisions of the Civil Service Law.

*Beggs* 284 N.Y. at 513, 32 N.E.2d at 533.

■ In the absence of grading, the city may lower compensation, but this freedom is not unlimited. If a contract exists between the employer and the employees, then it will constrict the city's ability to lower compensation. If there is no statutory limitation on the employer, no grading, and no contract, the city may still not discriminate against employees of the same class. *Brightman* at 591. In addition, one of the basic precepts of civil service laws indicates that like duties must receive like pay, and those with higher duties and responsibilities should receive more compensation for their work. *Id.;* 15 A Am.Jur. Civil Service § 348 (1976).

■ In brief, then, where change in an employee's compensation brings that employee below their grade, there has been a demotion. Where, as here, there is no grading, we will inquire further to determine: (1) whether there are contract limitations imposed on the employer; (2) whether the action is attempted subterfuge to avoid the law that employees may be demoted only for specific reasons; (3) whether the action results in discrimination against employees within the same class; and (4) whether the employee continues to receive

more compensation than other employees who perform fewer duties.

### III.   Application to the Case at Bar

The CSOs cannot rely on a contract theory here, and do not appear to dispute the commission's finding in this regard. The agreements relating to fringe benefits terminated at the end of the year, and were renegotiated prior to the start of the new fiscal year. The CSOs cannot extend those contracts past their one-year limits. Further, our court has specifically rejected the theory that past practices of allowing higher pay or benefits for a specific group results in a vested right in the employees to that benefit. *Brightman* at 591.

 The CSOs do not claim that the changes in fringe benefits were made for any other reason than that presented by the city, to achieve uniformity of benefits among the CSOs. There is no evidence of any other motive in instituting the changes than this. Uniformity of pay among employees who perform similar tasks is not an improper goal, and in fact is one of the basic principles of civil service law. *See, e.g., Brightman* at 590–91; 15A Am.Jur.2d *Civil Service* § 348 (1976).

The police and fire department CSOs who testified all agreed there was no discrimination among the CSOs. Instead, the change in benefits was made to eliminate different treatment of those within the same class.

The remaining limit upon the ability of the city to adjust the fringe benefits is the principle that the higher duties and responsibilities of the CSOs warrants higher compensation. The grades of salaries of the two groups provides the CSOs will continue to receive higher pay than the persons they supervise. Although police rank and file receive one-half more holiday pay than the CSOs, and prepaid prescription benefits, the other benefits the CSOs receive, along with their salary, indicates they receive more compensation than the rank and file.

We find the decrease in benefits to some of the supervisory employees in implementing a plan to bring uniformity in benefits among the CSOs is not a demotion where it did not bring their fringe benefits below a contract or grade limit, and neither discriminates against employees within the class nor results in their receiving equal or lower pay than those with fewer duties. Accordingly, no civil service laws were violated by the action and we affirm the trial court.

AFFIRMED.